# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Robert B. Joseph,**
**Petitioner Below, Petitioner**

**FILED**

June 7, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-0611** (Kanawha County 06-MISC-479)

**David Ballard, Warden, Mount Olive Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Robert B. Joseph, by counsel Matthew A. Victor, appeals the order of the Circuit Court of Kanawha County, entered April 17, 2012, denying his post-conviction habeas corpus petition. Respondent Warden David Ballard,[1] by counsel Laura Young, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On the night of March 28, 2001, petitioner grabbed his .22 caliber pistol and fired five shots into Scott Light, killing him. A jury found petitioner guilty of first degree murder. In his first trial, petitioner sought to assert the defense of diminished capacity resulting from a head injury he sustained in a motorcycle accident in 1989.[2] Following an in camera hearing, the trial court found that petitioner's experts failed to offer competent evidence to establish that petitioner lacked the mental capacity to form specific intent. Therefore, the trial court excluded this testimony.

Petitioner appealed his first conviction to this Court. In *State v. Joseph*, 214 W.Va. 525, 590 S.E.2d 718 (2003), we held that the diminished capacity defense is available in West Virginia to permit a defendant to introduce expert testimony regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime. *Id*. at Syl. Pt. 3. We noted that this defense is asserted ordinarily when there is a lesser included offense for the offense charged. The successful use of

---

[1]Pursuant to Rule 41(c) of the Rules of Appellate Procedure, the name of the current warden has been substituted as the respondent in this action.

[2]Among the serious injuries petitioner sustained in the accident was a crush injury to his left frontal skull.

1

this defense may render the defendant not guilty of the particular crime charged, but does not preclude a conviction for a lesser included offense. *Id*. This Court remanded the case for a new trial.

Upon retrial, the jury heard expert testimony regarding petitioner's claim of diminished mental capacity. Defense counsel called expert witnesses, Mark Hughes, M.D., a board certified psychiatrist, Robert Solomon, Ph.D., a forensic psychologist, and Robert Granacher, M.D., a board certified medical doctor and forensic neuro-psychiatrist. The State called Ralph Smith, M.D., in rebuttal. Dr. Smith had performed a forensic psychiatric evaluation on the petitioner. Following a three day trial in August of 2004, a jury convicted petitioner of first degree murder. He was sentenced to life in prison with a recommendation of mercy. This Court denied petitioner's direct appeal following the second jury trial.

In December 2006, petitioner, pro se, filed a petition for post-conviction habeas corpus relief. The circuit court denied the petition. In March 2008, this Court reversed and remanded with directions to conduct an omnibus hearing. Petitioner's appointed counsel raised nine issues in the amended petition for writ of habeas corpus: 1) the trial court erred by preventing petitioner from being examined by his expert; 2) petitioner was denied the right to a fair trial by the trial court allowing improper cross-examination; 3) the trial court erred by not curing the State's misleading cross-examination; 4) the trial court denied him the right to present his defense by denying his motion to be examined by his expert; 5) insufficiency of the evidence to support a first degree murder conviction; 6) ineffective assistance of counsel; 7) the trial court gave an improper jury instruction which shifted the burden of proof to petitioner; 8) the trial court erred by giving a jury instruction defining "a reasonable doubt," by permitting the prosecuting attorney's self-introduction as a representative of "the citizens of Kanawha County," and by differentiating between direct and circumstantial evidence; and 9) cumulative error. The circuit court conducted a hearing on July 20, 2011. The parties stipulated that they would submit the matter on the respective briefs, in lieu of witness testimony. After reviewing this matter, the circuit court denied the petition.

On appeal, petitioner raises the same assignments of error as raised in the habeas corpus petition below. We note that this Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

After careful consideration, this Court finds that the circuit court did not err in denying habeas corpus relief to petitioner. We will address the main issues raised by petitioner in this

2

appeal.[3] Petitioner challenges the sufficiency of the evidence to support his conviction of first degree murder. Specifically, he contends that the record is replete with expert testimony refuting the State's theory of premeditation. Petitioner maintains the evidence demonstrated that he lacked the mental capacity to form premeditation as a result of his previous head injury. Respondent Warden replies that substantial evidence supports petitioner's conviction, including the testimony of the State's expert witness, Dr. Smith, as well as the statements and behavior of petitioner at the time of the murder. We have held that,

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 5, *State v. Broughton*, 196 W.Va. 281, 470 S.E.2d 413 (1996).

Upon our review, this Court finds that the evidence was sufficient to support the first degree murder conviction, keeping in mind that for the purpose of this analysis, all the evidence must be viewed in the light most favorable to the prosecution. *Id*. At trial, witnesses to the murder testified that petitioner said "F**k you" to the victim just before he pulled the trigger five times. Petitioner backed his vehicle over the victim while leaving the premises. Petitioner drove to his parents' home and called 911. The jury heard petitioner's 911 call, where he advised the 911 operator that, "I just shot Scott Light at the mouth of Eight Mile Hollow. Somebody better

---

[3]We find no merit in petitioner's contention that the trial court erred in preventing petitioner to be examined by his own expert, Dr. Granacher, while incarcerated. The first attempt at such visit occurred when Dr. Granacher appeared without notice at the South Central Regional Jail on the eve of the second trial, or about August 6, 2004. Jail personnel declined to permit the examination without a court order. On August 9, 2004, defense counsel requested that Dr. Granacher be permitted access to petitioner at the jail. Upon inquiry, trial counsel stated that the visit would change neither Dr. Granacher's opinion nor his testimony and no additional report would be generated. The trial court denied such request based upon the previous ruling that expert opinions and the bases therefore be disclosed in advance of trial. We find that the trial court did not abuse its discretion in this regard. Furthermore, a habeas corpus proceeding is not a substitute for a writ of error. Trial error, not involving error of constitutional dimension, is not reviewed. *See* Syl. Pt. 4, *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979).

get there before he dies. I just shot the son of a b*tch." Furthermore, on the issue of mental capacity, Dr. Smith opined that petitioner had the mental capacity to premeditate, deliberate, and act intentionally. Considering this evidence, we see no compelling reason to disturb the jury's finding on appeal.

Petitioner also raises an ineffective assistance of counsel claim in this appeal. He asserts that counsel erred by not having petitioner personally examined by his retained expert, Dr. Granacher. When addressing this matter, the circuit court noted that both trial counsel and Dr. Granacher stated that any personal examination would do nothing to change the opinion that petitioner suffered from diminished capacity due to frontal lobe brain damage. Dr. Granacher testified regarding the clinical significance of frontal lobe brain damage and how it impairs planning functions. He reviewed petitioner's medical history, including psychiatric evaluations, and specifically referred to petitioner's CT brain scan which revealed frontal lobe brain damage. Accordingly, we find that the failure to arrange for a personal examination with Dr. Granacher does not rise to the level of ineffective assistance. His opinion and testimony would have been the same, and consequently, the result of the trial would have been the same. *See* Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995)

For the foregoing reasons, we affirm. The circuit court's order reflects its thorough analysis of the grounds raised in the petition for habeas corpus. Having reviewed the opinion order entered on April 17, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to all the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

Affirmed.

**ISSUED:** June 7, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

FILED

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA PM 4: 21

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

State of West Virginia ex rel.
Robert B. Joseph,
                    Petitioner,

v.                                                    Civil Case No.        06-MISC-479
                                                      Criminal Case No. 01-F-291
                                                      Writ No.               12-0006
                                                      Judge Carrie Webster

Thomas McBride, Warden, MOCC,
                    Respondent.

## ORDER DENYING PETITIONER'S AMENDED PETITION
## FOR WRIT OF HABEAS CORPUS

This matter came before the Court the undersigned's petition for post-conviction habeas

corpus relief. On the 9th day of September 2009, by and through his counsel, Matthew A. Victor,

filed an Amended Petition for Writ of Habeas Corpus Ad Subjiciendem. K. Michele Drummond,

Assistant Prosecuting Attorney for Kanawha County timely filed an Answer on behalf of the

Respondent.

The Court held an Omnibus Hearing on the 20th day of July 2011, wherein counsel for the

parties appeared along with the petitioner, who also appeared in person. Counsel for the parties

stipulated that in lieu of witness testimony, they would submit the matter on the respective briefs

filed herein. Following oral argument on the petition, counsel provided the Court with copies of

the portions of the trial transcript referenced during oral argument.

After careful review of the parties' pleadings, legal briefs, and oral argument presented in

support thereof, and upon consideration of the evidence in this matter, including the record of the

1

3

criminal trial, as well as pertinent legal authority, the Court concludes the Petitioner has failed to establish a basis for the relief sought in his Amended Habeas Corpus Petition. The reasons for the Court's decision are set forth in the opinion below.

## Findings of Fact

1. The Court takes judicial notice of all proceedings and the record in the underlying case, to wit: Criminal 01-F-291.

2. The Circuit Court of Kanawha County, West Virginia, has proper jurisdiction in this matter pursuant to W.Va. Code §53-4A-1 - 11 *et seq*.

3. Following his arrest and prior to his first scheduled criminal trial, the Petitioner underwent several court-ordered mental health evaluations to determine his criminal responsibility and competency to stand trial.

4. On May 3, 2002, a Kanawha County jury convicted the Petitioner, Robert B. Joseph, of first degree murder in the shooting death of Scott Light. In accordance with the jury's verdict, the circuit court sentenced him to life in prison with a recommendation of mercy.

5. The Petitioner appealed his criminal conviction, alleging the trial court violated his constitutional right to a fair trial by excluding expert testimony that Petitioner wanted to introduce in support of his "diminished capacity" defense.[1]

---

[1] Following an *in camera* hearing, the trial court found that Petitioner's experts failed to offer *competent evidence* to establish that Joseph was *incapable* of forming the 'specific intent' element required before a person can be convicted of murder in the first degree, and ruled that their opinions would be excluded.

2

6. The West Virginia Supreme Court of Appeals granted the Petitioner's appeal, and found that the trial court erred by excluding expert testimony regarding Petitioner's "diminished capacity." The Petitioner's conviction was reversed and the case remanded back to the circuit court for a new trial consistent with the Court's opinion.

7. Following remand, the trial court entered a scheduling order which established a timeframe for the parties to exchange supplemental expert reports and other case-related discovery prior to Petitioner's second trial scheduled on April 26, 2004.

8. Pursuant to the ruling and directive of the West Virginia Supreme Court, the trial court ruled that Joseph could present testimony of his three previously disclosed expert witnesses on the issue of diminished capacity. One of these experts was Robert P. Granacher, M.D. ("Granacher"), a board-certified medical doctor and forensic neuro-psychiatrist, who had prepared two written reports in connection with Joseph's diminished capacity defense. Joseph's counsel provided the State with Granacher's supplemental report of May 7, 2004.

9. The trial court later continued the second criminal trial until August 2, 2004, to allow the parties sufficient time to comply with the trial court's order. The second trial was further continued until August 9, 2004, upon defense counsel's motion to continue due to a death in the family.

10. On August 9, 2004, the first day of Petitioner's second criminal trial, Petitioner's trial counsel filed a written motion, requesting that court authorize Dr. Granacher to evaluate the Petitioner at the jail, prior to Granacher's trial testimony. The Court denied the Defendant's motion, finding it was untimely and would result in unfair prejudice to the State.

3

5

11. Following a three day criminal trial, on August 12, 2004, a Kanawha County jury convicted the Petitioner, Robert B. Joseph, of first degree murder in the shooting death of Light.

12. On September 20, 2004, in accordance with the jury's verdict, the circuit court sentenced the Petitioner to life in prison with a recommendation of mercy.

13. West Virginia Supreme Court denied Petitioner's direct appeal.

14. On December 13, 2006 the Petitioner in this action filed a pro se petition for post-conviction habeas corpus relief.

15. The petition was summarily denied by the Honorable Irene Berger and the Petitioner appealed to this Court.

16. On March 4, 2008, this Court reversed Judge Berger's decision and remanded with directions to about counsel, conduct and omnibus hearing, and issue a final decision.

17. On remand, the circuit court appointed counsel who later had to be relieved due to illness, and thereafter the petitioner's current counsel was appointed.

18. On September 9, 2009 the Petitioner filed an amended petition for post-conviction habeas corpus relief alleging numerous errors of a constitutional dimension.

### Preliminary Legal Authority

"A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. pt. 4, *State ex rel. McMannis v. Mohn,* 163 W. Va. 129, 254 S.E.2d 805 (1979). West Virginia's post-conviction habeas corpus proceedings afford a petitioner an opportunity to "raise any collateral issues which have not previously been fully and fairly litigated." *Markley v. Coleman,* 215 W. Va. 729, 732,

4

6

601 S.E.2d 49, 52 (2004). "At the omnibus habeas corpus hearing, a petitioner is required to raise all grounds known or that reasonably could be known by [him]". *Id* at 732-733.

"Our post-conviction habeas corpus statute … clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding." Syl. pt. 1, *Gibson v. Dale*, 173 W. Va. 681, 319 S.E.2d 806 (1984). "The initial habeas corpus hearing is res judicata as to all matters raised and to all matters known or which with reasonable diligence could have been known … ." Syl. pt. 4, *Losh v. McKenzie* 166 W.Va. 762, 277 S.E.2d 606 (1981). Therefore, only ineffective assistance of habeas counsel, newly discovered evidence, or a change in law favorable to the applicant and which may be applied retroactively can be considered in any subsequent habeas petition. *Id.*

A petitioner is entitled to careful consideration of his claims. *Markley,* 215 W. Va. 729, 734, 601 S.E.2d 49, 54 (2004). Such consideration is mandated in order to assure that no violation of petitioner's due process rights could have escaped the attention of either the trial court or the State Supreme Court. *Id.* The State Supreme Court has held that where a petitioner fails to provide adequate factual support for his allegations and makes nothing more than mere blanket assertions without the appropriate factual basis, the claims must be denied. *Id.*

"The court shall make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced, shall clearly state the grounds upon which the matter was determined, and shall state whether a federal and/or state right was presented and decided." West Virginia Code § 53-4A-7(c) (2008). To prevail in a post-conviction habeas corpus proceeding, "the petitioner has the burden of proving by a

5

preponderance of the evidence the allegations contained in his petition or affidavit which would warrant his release." Syl. pt. 1, *State ex rel. Scott v. Boles*, 150 W.Va. 453, 147 S.E.2d 486 (1966).

## Petitioner's Grounds for Relief

The Petitioner set forth fifteen (15) individual grounds in his *Habeas Corpus Notification Form* filed on August 5, 2009. Sections 2-5 of the *Habeas Corpus Notification Form* informed the Petitioner of the following; 1) To initial those grounds you want to raise; 2) You must raise all grounds you have for relief in this proceeding; 3) If you do not raise a ground for relief in this proceeding you will generally not be able to raise that claim ever again in state court; and 4) If you do not initial a ground you waive it. On September 9, 2009, the Petitioner, by counsel, filed his Amended Petition for Writ of Habeas Corpus.

The Petitioner raised four main issues in his Amended Petition: 1) Ineffective assistance of counsel; 2) Instructions to the jury; 3) Alleged errors regarding Petitioner's expert; and 4) Other grounds. However, the Petitioner has alleged the following nine constitutional violations in his Amended Petition for Writ of Habeas Corpus: 1) The trial court erred in preventing the Petitioner from being examined by his expert; 2) The trial court violated the Petitioner's right to a fair trial by allowing improper cross-examination; 3) The trial court erred by not curing the State of West Virginia's misleading cross-examination; 4) The trial court erred by denying the Petitioner his right to present his defense by denying the Petitioner's motion to examined by his expert; 5) The evidence was woefully insufficient to convict him of First-Degree murder beyond a reasonable doubt; 6) Ineffective assistance of counsel; 7) The trial court erred by giving the

6

instruction which unconstitutionally shifted the burden of proof to the Petitioner in violation of due process of law; 8) The trial court erred by giving the jury an instruction defining "a reasonable doubt" by permitting the Prosecuting Attorney's self-introduction as a representative of 'the citizens of Kanawha County' and by differentiating between direct and circumstantial evidence; and 9) Cumulative error in the trial-court proceedings deprived the Petitioner of his due process rights.

Petitioner advances all his arguments under state and federal rights.

## Discussion

### A. Alleged Errors Regarding Petitioner's Expert

In reviewing challenges to findings and rulings made by a circuit court, appellate courts apply a two-pronged deferential standard of review: appellate court's review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and appellate courts review the circuit court's underlying factual findings under a clearly erroneous standard, but questions of law are subject to de novo review. *State v. Keesecker;* 222 W.Va. 139, 663 S.E.2d 593 (2008).

Joseph alleges that the trial court erred by denying his motion to allow Granacher to exam him at the jail prior to Granacher's trial testimony. Discussed *supra*.

On March 25, 2004, upon motion of Joseph, the Court ordered that Joseph be transported from the jail to a radiologist, to aid Granacher in obtaining x-rays of Joseph's frontal lobe damage. Prior to the second trial, Joseph's trial counsel supplemented his previous disclosure with the addition of Dr. Granacher's written report, dated April 9, 2004, which set forth the

7

9

opinion that Joseph suffered from diminished capacity due to frontal lobe damage. The report did not contain the bases for the opinion. Granacher was called by the Petitioner to offer testimony regarding brain damage that the Petitioner sustained as a result of a previous brain injury resulting in frontal lobe damage. Granacher testified regarding the clinical significance of frontal lobe damage and how substantial dead brain tissue impairs planning functions. He testified that he had reviewed Joseph's past medical history. He specifically referred to a CT brain scan from an earlier incident where he sustained brain injury resulting in frontal lobe damage, orthopedic records, psychiatric evaluations, and exams from other testifying doctors, documents generated in connection with the criminal case. (Tr. p. 500-510). He testified that if someone injures the frontal parts of their brain, they cannot plan, organize, or execute. Frontal lobe disorder causes those with frontal lobe damage to be impulsive and to act without thinking. He went on to explain that if time gets compressed and things happen very rapidly, an individual's ability to think is impeded.

Upon the State's motion, the Court conducted a hearing on April 21, 2004, at which time the Court ordered the parties to provide, pursuant to Rule 16(b)(1)(C) of the Rules of Criminal Procedure, "written summaries of any expert witness testimony as to the opinion, the bases and reasons therefor, together with the witness qualifications, sufficiently in advance of the trial to allow both sides to adequately prepare to meet those opinions."

Joseph offers three procedural reasons why the trial court's ruling was in error.

Joseph argues that Rule 16(b)(2) of the West Virginia Rules of Criminal Procedure does not require the disclosure of the results of contacts or communications with his expert, nor is he required to provide any internal defense documents prepared "in connection with the

8

investigation or defense of the case." Rule 705 of the West Virginia Rules of Evidence does not require the disclosure of the underlying facts and data which support the expert's opinion unless the trial court requires the disclosure, or unless during cross-examination the expert is asked to disclose that information.

Under the rules, a defendant [Joseph] is required to disclose the results of examinations only if the defendant [Joseph] makes such a request of the State.

The Court's concerns about "disclosure" were assuaged by Joseph's explanation that an examination would not change Dr. Granacher's expert opinion.

Inasmuch as the trial court's order denying Joseph's request was based on her previous April 21, 2004 ruling directing that all expert opinions shall be disclosed in advance of trial, this Court finds that the trial court was acting within and did not abuse its discretion in denying Joseph's attorney's last minute attempt to allow Joseph's expert to examine and interview Joseph. The trial court's evidentiary rulings are only reviewed when there is any abuse of discretion. *State v. Guthrie*, 194 W. Va. 657, 461 S.E. 2d 163 (1995).

The Court takes exception to the other reasons offered by Joseph inasmuch as the Court set forth timelines for disclosure of expert reports and other case-related discovery to ensure that both parties could fully develop and present both the facts of the case as well as expert testimony on the issue of diminished capacity.

In response to Joseph's first assertion, the Court finds that Rule 16(b)(2) of the West Virginia Rules of Criminal Procedure specifically provides an exception to disclosure of scientific or medical reports if the Defendant requests production of same from the State. The

9

record indicates that prior to the first trial, Joseph's trial counsel requested disclosure of State's expert testimony. Thus, the reports of all expert witnesses were provided to each side pursuant to W.Va. R.Crim.Pro., Rule 16(a)(1)(C) and (D) and Rule 16 (a)(1)(E).

The fact that Joseph's counsel represented to the Court that an exam would not change the doctor's opinion underscores the argument that the exam or visit was not necessary. On the other hand, it would have been difficult, given this last minute request, for the Court to believe that granting the motion did not invited substantial risk of prejudice to the State, particularly when the State would not have the opportunity to question the expert in advance of his testimony, and would further be obligated to rely solely upon the oral testimony of the expert regarding the substance of his visit with Joseph the evening before his testimony.

The Court finds that the trial court acted within its discretion in preventing unfair surprise by carefully assuring adequate discovery to both sides prior to trial. The defense admitted that the examination of the Joseph would do nothing to change Granacher's "unequivocal opinion". (Tr. 152) Since the examination would have no effect on the expert's opinion, the Court finds there was no prejudice to Joseph.

The Court further finds that any error committed by the trial court was at best harmless. Since the interview would neither add to nor change the expert's opinion, there was no prejudice to Joseph. (Tr. 153).

During cross examination, Granacher admitted that he did not interview or physically exam the Petitioner prior to the issuance of his reports. He testified that his professional opinions and conclusions in the instant case were largely formed and derived from his review of

10

the Petitioner's x-rays and various medical records, as well as the reports issued by the other two experts, a psychiatrist and a psychologist.

The State cross-examined Granacher as to the examinations which he had conducted at the time he issued his opinion in the reports of April 9 and May 7, 2004. (Tr. 526 – 559) The State had a "good-faith" basis for asking these questions because the reports were issued and the conclusions made were without Granacher conducting any tests or interviews of Joseph. Had the court allowed the expert to exam Joseph at the jail during the trial, the State's cross-examination would have been conducted in exactly the same manner. The State's questions were limited to the evaluations Granacher performed prior to issuing his opinion in the written reports.

During cross examination, the State also challenged Granacher's "unequivocal" opinion, despite the fact that he did not perform any tests or interview Joseph prior to issuing his reports. That was within the scope of proper cross examination and the trial court did not abuse its discretion in permitting the same.

Joseph argued that the State was able to exploit the fact that the examination had never occurred.

The Court finds that witness credibility is an issue for the jury to determine. The State was entitled to question Granacher regarding not only his professional and academic credentials, but also the methodology he utilized in forming his opinions and conclusions regarding Joseph's mental state. The exam sought by Joseph's counsel during the actual trial and before Granacher's trial testimony does not substantively change the fact that the expert did not conduct a physical exam of Joseph prior to forming his opinions and issuing a report in this matter. The

11

State relied upon the expert's own published work on neuropsychiatric testing to establish that "an important part of determining someone's brain functioning or lack of brain functioning." The State did not act inappropriately when it intimated that Joseph's own expert had neglected to perform an examination in direct contravention of his own web site, his own treatise, and professional standards. Ameliorative action was not required because the cross-examination was not baseless.

## B. Ineffective Assistance of Counsel

In West Virginia, ineffective assistance of counsel claims are to be governed by the two pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995); *State ex rel. Quinones v. Rubenstein*, 218 W. Va. 388, 624 S.E.2d 825 (2005); *State ex rel. Wensell v. Trent*, 218 W. Va. 529, 625 S.E.2d 291 (2005). A court must first determine if counsel's performance was deficient under an objective standard of reasonableness. See *Miller, Rubenstein*, and *Wensell*, infra. A court must also determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id*.

The State Supreme Court has long held that:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. pt. 6, *Miller*; Syl. pt. 4, *Rubenstein*; Syl. pt. 3, *Wensell*.

12

The State Supreme Court has also stated that when presented with an ineffective assistance of counsel claim, a circuit court should always presume strongly that the attorney's performance was reasonable and adequate. Syl. pt. 6, *Miller*; *State v. Chapman*, 210 W. Va. 292, 557 S.E.2d 346 (2001). The Court further recognized that a petitioner who seeks to rebut such a strong presumption bears a difficult burden. *Id.* In fact, the presumption can only be rebutted "by clear record evidence that the strategy adopted by counsel was unreasonable. *Coleman v. Painter*, 215 W. Va. 592, 596, 600 S.E.2d 304, 308 (2004).

Joseph argued that defense counsel was ineffective when he failed to arrange for Granacher to meet with Joseph prior to the onset of the trial. In response to trial court's inquiry regarding the lateness of the motion and the potential prejudice to the State if granted, Joseph's trial counsel argued that the examination would not change Granacher's opinion." (Tr. 152).

Since the examination would have no effect on the expert's opinion, any error by the court was at best harmless. Since the interview would neither add to nor change the expert's opinion, there was no prejudice to Joseph.

The record reflects that Joseph's trial counsel attributed the delay to his efforts to save costs associated with Grancher's time and travel had the examination been scheduled prior to the trial. The Court notes, however, that Granacher testified at trial that his primary office location is in the neighboring state of Kentucky, and that he frequently traveled to surrounding states as part of his practice.

The trial court's scheduling order provided adequate time for Joseph's trial counsel to facilitate this interview prior to trial. It appears from the record that Joseph's counsel failed to

13

provide the trial court with a reasonable explanation regarding his failure to arrange for Granacher to meet with and exam Joseph in advance of the second trial. Even if Joseph's trial counsel could have, and arguably should have scheduled a meeting between Joseph and Granacher prior to his trial, the Court finds that it would not have likely affected the outcome of Joseph's trial given the strength of the evidence presented by the State.

The Court therefore finds and concludes Petitioner's ineffective assistance of counsel claim is without merit.

## C.  Jury Errors

Joseph objects to the trial court's instruction to the jury on the statutory element of 'intent':

> It is reasonable to infer that a person ordinarily intends to do that which he does or which is the natural or probable consequence of his knowing acts. The jury may draw the inference that a person intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonable have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the State had proved beyond a reasonable doubt the required criminal intent.

The West Virginia Supreme Court of Appeals in *State v. Pendry*, 159 W.Va. 738, 227 S.E.2d 210 (1976) determined that a holding by the United States Supreme Court in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) stood for the following propositions:

> 1. In a criminal case, the State is required to carry the burden of proving beyond a reasonable doubt every material element of the crime with which the defendant is charged;
>
> 2. In carrying its burden of proof beyond a reasonable doubt, the State is not entitled to an instruction which requires a jury to accept as proved beyond a reasonable doubt any element of the criminal offense charged,

14

and this concept embraces presumptions (more properly inferences) as to which the jury may be instructed; and

3. A defendant in a criminal case cannot be required to present evidence either in terms of going forward with the evidence or in terms of bearing the burden of persuasion in connection with any material element of the crime charged.

The Fourth Circuit, in *United States v. Arthur*, 544 F.2d 730 (4th Cir. 1976), approved the following jury instruction:

It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that the defendant possessed the required criminal intent.

Habeas counsel argues that the jury instruction in the present case runs afoul of the holding of the United States Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510 (1979). In *Sandstrom*, the trial court instructed the jury that "the law presumes that person intends the ordinary consequences of his voluntary acts".

The Court finds that the jury instruction in the present case was proper since, like the instruction in *Arthur*, it was neither couched in mandatory terms nor shifted the burden of proof to the defendant. Further, the instructions must be considered as a whole, and the instructions clearly showed that that the burden was on the State to prove intent. The jury was permitted, but not required, to find, based upon the evidence, Joseph's intent, and the jury was properly and adequately advised of the State's duty to prove intent beyond a reasonable doubt.

Joseph objects to the trial court's instruction to the jury on reasonable doubt that:

15

The law presumes a defendant to be innocent of crime. Thus a defendant, although accused, begins the trial with a "clean slate" with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

It is not required that the government proves guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense-the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it.

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

So if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a defendant is guilty of the charge, it must acquit. If the jury views the evidence in the case as reasonably permitting either of two conclusions-one of innocence, the other of guilt-the jury should of course adopt the conclusion of innocence.

Habeas Counsel argued that the above instruction runs afoul of the holding by the United States Supreme Court in *Victor v. Nebraska*, 511 U.S. 1 (1994); the Fourth Circuit Court of Appeals in *United States v. Love*, 767 F.2d 1052 (4th Cir. 1985); and the West Virginia Supreme Court of Appeals in *State v. Ashcraft*, 172 W.Va. 640, 309 S.E.2d 600 (1983).

In *Victor*, the United States Supreme Court held that the United States Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a

16

18

matter of course. The Court noted that as long as the jury is instructed that a defendant's guilt must be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. According to *Victor*, the constitutional question is whether there is a reasonable likelihood that the jury understood the instructions to allow a conviction based on proof sufficient to meet the standard of beyond a reasonable doubt.

In *Love*, the petitioners contended that the trial court's charge relating to the definition of reasonable doubt constituted plain error, necessitating reversal of their convictions. Specifically, the petitioners objected to the part of the trial court's charge instructing that "...reasonable doubt exists in any case when after a careful and impartial consideration of all the evidence, you the jury do not feel convinced to a reasonable moral certainty that a Defendant is guilty of the charges." The petitioners all challenged language in the instruction that "... proof beyond a reasonable doubt is established if the evidence is such as you would be willing to rely and act upon in the more important affairs of your own life."

Although the Fourth Circuit Court of Appeals noted that it has repeatedly joined in the general condemnation of a trial court's attempt to define reasonable doubt in its jury instructions, it concluded that the instructions given in *Love* were not plain error, which would require reversal of the petitioners' convictions.

In *Ashcraft*, the West Virginia Supreme Court of Appeals discouraged the use of instructions which attempt to define reasonable doubt beyond the standard charge.

In *State v. Goff*, 166 W.Va. 47, 272 S.E.2d 457 (1980) the trial court offered, and the West Virginia Supreme Court upheld, a standard instruction on the presumption of innocence and burden of proof. Like *Goff*, the instruction in the present case was a standard instruction. The Court finds that the instruction, when considered in the context of the charge as a whole, correctly conveyed the concept of reasonable doubt. The Court concludes that it was not misleading, confusing, nor improper.

Additionally, counsel contends that the jury instruction in the present case regarding direct and circumstantial evidence runs afoul of the holding by the Fourth Circuit Court of Appeals in *United States v. Gray*, 137 F.3d 765 (4th Cir. 1998), and the West Virginia Supreme Court of Appeals in *Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

In *Gray*, the United State Supreme Court held that circumstantial evidence is treated no differently than direct evidence and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence.

In *Guthrie*, the West Virginia Supreme Court overturned the long established rule that when the State relies upon circumstantial evidence, in whole or in part, a court, in order to sustain a guilty verdict, all other reasonable hypotheses must be excluded by the prosecution save that of guilt. In doing so, the Supreme Court recognized that circumstantial evidence and direct evidence inherently possess the same probative value and are indistinguishable so far as the jury's fact-finding function is concerned. The jury is required to weigh all of the evidence, both direct and circumstantial, against the standard of proof beyond a reasonable doubt.

Based upon the findings and legal analysis set forth in the above opinions, the Court finds that the jury instruction in the present case was proper, since the trial court instruction merely

18

defined direct and circumstantial evidence, and did not include the language excised by *Gray* and *Guthrie*. The instruction simply advised the jury that the law accepts both direct and circumstantial evidence to establish the guilty of the accused, and that in some cases, circumstantial evidence is the only source of proof. The instruction did not differentiate between direct and circumstantial evidence and recognized that there should be only one standard of proof in criminal cases, that of proof beyond a reasonable doubt. According, when read as a whole, this Court concludes that the jury instructions in the instant case were proper.

Counsel argues the prosecutor's comment, "we the people of Kanawha County," during his introduction to the jury had significant Constitutional implications.

West Virginia's highest Court has held in Syllabus Point 1 of *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978), that "[a] judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney in his opening statement to a jury which do not clearly prejudice the accused or result in manifest injustice." Based on the record and supporting law, the court finds the prosecutor's remarks did not clearly prejudice the petitioner.

**D. Other Errors**

Joseph argued that sufficient evidence was presented to the jury on the issue of Petitioner's mental state to raise a reasonable doubt as to his intent. The jury heard testimony from Dr. Granacher, M.D., Dr. Solomon, PhD., and Dr. Hughes, M.D.

Additionally, the jury heard eye witnesses' testimony about Joseph's actions and state of mind on the night that the victim was killed. These witnesses testified that Joseph was angry with Jessica Martin and Duane Lucas; that Joseph threatened to kill them and shot twice as they left his home; that Joseph subsequently attempted to track Martin and Lucas down, and when the

19

victim thwarted his effort, Joseph became angry with the victim and struck him; that Joseph retrieved a gun from his truck and pointed the gun at the victim, firing it not once, not twice, but five times; that Scott Hackney, a passenger in Joseph's vehicle cried out for Joseph to stop; and that Joseph drove to his parents' home immediately following the shooting.

Finally, the jury heard Joseph's "911" call, stating "I just shot Scott Light at the mouth of Eight Mile Hollow. Somebody better get there before he dies. I just shot the son-of-a-bitch."

Based on the entirety of the record this Court disagrees. This Court finds that the jury was permitted, pursuant to the instructions of law to disregard the expert testimony, in part or in its entirety, if it chose to do so. Thus the jury permissibly found that Joseph acted intentionally and disregarded his diminished capacity defense.

Finally counsel argues that the cumulative effect of the numerous errors cited herein rises to the level requiring the reversal of the Petitioner's conviction. "Under our law, [w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error. *State v. Foster*, 221 W.Va. 629, 645, 656 S.E.2d 74, 90 (2007). However the record before us does not show numerous errors that would warrant setting aside the Petitioner's conviction.

Based on the above the court finds and concludes that Petitioner's Amended Habeas Petition is without merit.

## Ruling

20

22

For the foregoing reasons, the Court **DENIES** Petitioner's Amended Petition for Writ of Habeas Corpus.

The Court notes the objection and exceptions of the Petitioner to this ruling.

The Court **DIRECTS** the Circuit Court Clerk to provide certified copies of this order to counsel of record, and to the Petitioner, at Mount Olive Correctional Center. This is a final order.

ENTERED this 17th day of April, 2012.

CARRIE L. WEBSTER, JUDGE

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF CIRCUIT COURT OF SAID COUNTY
AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE COPY FROM THE RECORDS OF SAID COURT.
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS
DAY OF
CLERK
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA