470 S.E.2d 413

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Wayne A. BROUGHTON, Defendant Below, Appellant.**

No. 22944.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1996.

Decided April 8, 1996.

Silas B. Taylor, Managing Deputy Attorney General, Noel P. Brock and Audy M. Perry, Jr., Assistant Attorneys General, for the State.

Richard G. Gay, Law Office of Richard G. Gay, L.C., Berkeley Springs, for Appellant.

WORKMAN, Justice.

This is an appeal by Wayne Broughton (hereinafter "Appellant") from a July 11, 1994, order of the Circuit Court of Jefferson County sentencing him to consecutive sentences of one to fifteen years for delivery of cocaine, one to fifteen years for delivery of marijuana, and one to five years for conspiracy to deliver marijuana. The Appellant contends that the lower court committed several errors which justify reversal of the final order. We affirm the decision of the lower court, except to the extent that the one to fifteen year sentence for delivery of marijuana was statutorily improper. This matter will therefore be remanded for the correction of that sentencing error.

## I.

Police officers monitoring an apartment[1] in Ranson, West Virginia, on May 14, 1993, observed Mr. Robert W. Kaetzel, Jr., enter an apartment leased to Ms. Catherine Lohmeyer and thereafter exit that apartment. Mr. Kaetzel was approached by the police officers, and marijuana and cocaine were discovered in his possession. In exchange for cooperation in the investigation of the apartment, Mr. Kaetzel was not charged with possession of marijuana or cocaine. After wiring him, Ranson police officers provided Mr. Kaetzel with marked money and sent him back into the apartment at 10:45 p.m. to consummate a drug purchase. He returned at 10:50 p.m. with 5.76 grams of marijuana and .10 grams of crack cocaine. He explained to the officers, and later testified at trial, that he had paid the Appellant for both the marijuana and the cocaine but that the Appellant handed him only the cocaine and Mr. Lee Townsley handed him the marijuana.

Officer Johnston remained outside the apartment while the other officers returned Mr. Kaetzel to the police station for debriefing. Mr. Kaetzel informed the officers that the Appellant would probably leave the apartment shortly, and the Appellant was indeed observed exiting at approximately 12:15 a.m. on May 15, 1993. The Appellant was approached by Officer Johnston, and the Appellant ran approximately 200 yards before being apprehended.[2] A black wallet containing a third-party check made out to Mr. Townsley and signed over to the Appellant was in the Appellant's possession.

A police dog trained in drug detection was brought to the scene of the Appellant's apprehension at approximately 7:30 a.m. on May 15, 1993. The dog located $1840 in cash, including the marked money, thirty-five to forty feet from the Appellant's point of apprehension.

The Appellant was indicted on September 21, 1993, on one count of delivery of cocaine, one count of delivery of marijuana, one count of conspiracy to deliver cocaine, and one count of conspiracy to deliver marijuana.[3] On September 23, 1993, the Appellant entered a plea of not guilty. During a June 3, 1994, trial, the Appellant testified that Mr.

---

1. The apartment was under observation by police officers due to previous information concerning possible illegal drug activity at that residence.

2. The Appellant testified at trial that he ran from the officer because he had a small bottle of vodka in his pocket.

3. Although the Appellant was indicted on both conspiracy to deliver cocaine and conspiracy to deliver marijuana, the conspiracy to deliver cocaine was not pursued based upon the State's determination that a conviction on such a count might be duplicitous of a conspiracy to deliver marijuana conviction.

Kaetzel had pulled a plastic wrapper from his breast pocket as he entered the apartment on May 14, 1993, and had remained in the bathroom for four or five minutes with Mr. Townsley before leaving the apartment. The Appellant further testified that Mr. Townsley had told the Appellant that Mr. Kaetzel did not like the Appellant because of a derogatory comment the Appellant had made about Mr. Kaetzel.

Subsequent to trial, the Appellant was found guilty of delivery of cocaine, delivery of marijuana, and conspiracy to deliver marijuana. On July 11, 1994, the lower court sentenced the Appellant to consecutive sentences of one to fifteen years for delivery of cocaine, one to fifteen years for delivery of marijuana, and one to five years for conspiracy to deliver marijuana.

The Appellant appeals to this Court and assigns the following errors: (1) improper admission of $1840 in cash located by a police dog near the point of apprehension; (2) insufficient evidence of conspiracy to deliver marijuana; (3) insufficient evidence of actual delivery of either marijuana or cocaine; (4) improper sentencing to two consecutive sentences for actions occurring within the same transaction, violating double jeopardy principles; (5) statutory violation by sentencing to one to fifteen years on the delivery of marijuana conviction; and (6) improper motivation of the lower court in sentencing and disproportionality and excessiveness of the sentence.

## II.

The Appellant contends that the $1840 in cash should not have been admitted because the State failed to lay a proper foundation for the evidence and because the evidence was not relevant or material to the matters at issue in the case. The Appellant emphasizes that the general rule with regard to evidence obtained through trained animals is that such evidence may be received where the State demonstrates the following with regard to the animal:

(1) they are pure blood and of a stock characterized by acuteness of scent and power of discrimination, (2) they possess these qualities and have been accustomed and trained to pursue human tracks, (3) they have been found by experience reliable in such pursuit, and (4) in the particular case they were put on the trail of the guilty party [who] was pursued and followed under such circumstances and in such a way as to afford substantial assurance or permit a reasonable inference of identification.

1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 4–12(F)(2)(a) (3d ed. 1994); *State v. McKinney,* 88 W.Va. 400, 106 S.E. 894 (1921). The Appellant maintains that this specific case does not fall within the purview of that general rule because the police dog was put on the scent of drugs rather than the trail of the Appellant or any other human. The Appellant argues that a standard such as that utilized in *Hetmeyer v. Commonwealth,* 19 Va.App. 103, 448 S.E.2d 894 (1994), should govern.

Expert testimony with respect to a dog's reaction to the odor of narcotics is admissible when supported by a proper foundation. Such foundation must establish the appropriate training and reliability of the dog in the detection of specific drugs by odor and the witness handler's expertise in interpreting the dog's behavior, together with circumstances conducive to a dependable scent identification by the animal and a credible evaluation of its related behavior.

448 S.E.2d at 898. The Appellant in the present case contends that the State failed to prove the relevance of this money and failed to establish a link or nexus between the Appellant and the money. *See* Cleckley, *supra,* § 4–1(E)(3).

Testimony at trial indicated that the police dog was unable to track the Appellant's actual route through the baseball field due to the many different scents on the field. The dog handler therefore put the dog on an article and drug search from the point of apprehension and radiating outward in a circular pattern. The dog then alerted the handler and retrieved the cash thirty-five to forty yards from the point of apprehension.

■ We have consistently explained that "'[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk,* 171 W.Va. 639, [643,] 301 S.E.2d 596, 599 (1983)." Syl. Pt. 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983). We find that the lower court did not abuse its discretion in admitting the $1840 in cash as authentic and relevant evidence. The foundation presented by the State adequately established that the marked bills were located by a trained, experienced police dog thirty-five to forty feet from the point of the Appellant's apprehension just hours after that apprehension. That testimony adequately established a nexus between the Appellant and the money, justifying its introduction as evidence before the jury. As the State suggests, any issues regarding the qualifications of the handler, the training of the dog, or the passage of time between the apprehension and the recovery of the cash affect the weight of the evidence rather than its admissibility.

### III.

■ The Appellant asserts that the lower court erred in failing to direct a verdict in his favor with respect to the charge of conspiracy to deliver marijuana because the State failed to introduce sufficient evidence to support a conviction on that count separate and apart from the conviction for delivery of marijuana. In syllabus point one of *State v. Stevens,* 190 W.Va. 77, 436 S.E.2d 312 (1993), we explained the following with regard to the propriety of granting a directed verdict in favor of a defendant:

"'"Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt." *State v. West,* 153 W.Va. 325, 168 S.E.2d 716 (1969).' Syl. pt. 1, *State v. Fischer,* 158 W.Va. 72, 211 S.E.2d 666

(1974)." Syllabus Point 10, *State v. Davis,* 176 W.Va. 454, 345 S.E.2d 549 (1986).

In syllabus point four of *State v. Less,* 170 W.Va. 259, 294 S.E.2d 62 (1981), we explained that: "[i]n order for the State to prove a conspiracy under *W.Va. Code,* 61–10–31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." We also reasoned in *Less* that "[t]he agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement." 170 W.Va. at 265, 294 S.E.2d at 67.

■ The Appellant maintains that the testimony of Mr. Kaetzel is insufficient to prove a conspiracy between the Appellant and Mr. Townsley and that even if such testimony were considered justification for submitting the matter to the jury, the State's evidence is inadequate to support a jury verdict of guilty. The standard of review for adjudging the sufficiency of evidence supporting a guilty verdict was recently enunciated in *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995). In syllabus point one of *Guthrie,* we explained:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Moreover, in syllabus point three of *Guthrie,* we elaborated as follows:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibil-

ity assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

We also explained in *Guthrie* that the "defendant must meet a heavy burden to gain reversal because a jury verdict will not be overturned lightly." 194 W.Va. at 668, 461 S.E.2d at 174.

■ In the present case, when viewing the evidence in a light most favorable to the prosecution, we find that a "rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *See Guthrie,* 194 W.Va. at 668, 461 S.E.2d at 174. The State presented evidence, through the testimony of Mr. Kaetzel, that the Appellant received payment for both the marijuana which Mr. Townsley[4] handed to Mr. Kaetzel and the cocaine which the Appellant handed to Mr. Kaetzel. The State further introduced evidence of a check found in the Appellant's possession at the time of his apprehension that was made out to Mr. Townsley and signed over to the Appellant.[5]

### IV.

■ The Appellant also contends that the lower court erred in failing to direct a verdict in favor of the Appellant with regard to the charges of delivery of cocaine and delivery of marijuana because the evidence was insufficient to support a conviction on either of those two counts. Applying the principles enumerated above regarding the propriety of directing a verdict in favor of the Appellant and the sufficiency of evidence

4. Mr. Townsley did not testify at the Appellant's trial.

5. The State also emphasizes that the Appellant visited the apartment frequently, admitted to be-

necessary to sustain a jury verdict, we find that the evidence presented by the State supports the guilty verdict on both delivery charges. Mr. Kaetzel testified that the Appellant accepted payment for both the marijuana and the cocaine and actually handed the cocaine to Mr. Kaetzel. The Appellant attempts to discredit and devalue Mr. Kaetzel's testimony because Mr. Kaetzel was an informant who purchased the drugs only because he had been apprehended earlier that evening and had agreed to cooperate in the police investigation. As the State emphasizes, it is the exclusive function of the jury to weigh the credibility of witnesses. *Guthrie,* 194 W.Va. at 669 n. 9, 461 S.E.2d at 175 n. 9. The fact that Mr. Kaetzel was an informant working in cooperation with the police may affect the credibility of his testimony, as determined by the jury, but it does not render his testimony less capable of supporting a verdict of guilt.

### V.

■ The Appellant maintains that the lower court erred in sentencing the Appellant to two consecutive sentences of one to fifteen years for delivery of marijuana and delivery of cocaine where both deliveries occurred during the same criminal transaction, such that multiple punishments would constitute double jeopardy. In syllabus point one of *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992), we explained as follows:

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

In syllabus point one of *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977), we noted those principles as applied through the West Virginia Constitution:

ing present on the night in question, and admitted that he knew that drug activity was being consummated in the apartment.

The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense.

In *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983), we addressed a defendant's contention that his convictions for possession with intent to deliver cocaine and possession with intent to deliver LSD related to the same transaction and could not be punished separately. The defendant maintained that under *State v. Barnett,* 168 W.Va. 361, 284 S.E.2d 622 (1981), simultaneous delivery of two controlled substances to the same person is one offense for purposes of the double jeopardy clause. In *Zaccagnini,* however, this Court distinguished *Barnett* and explained that the *Barnett* scenario involved "simultaneous delivery of two controlled substances that violated the same statutory provision and carried the same penalty." 172 W.Va. at 499, 308 S.E.2d at 139. By contrast, *Zaccagnini* presented this Court with a situation in which the defendant had violated two statutory provisions requiring different evidence to sustain a conviction. *Id.* at 500, 308 S.E.2d at 140. We determined that possession with intent to deliver a narcotic drug was a separate and distinct offense from that of possession with intent to deliver another controlled substance, and we concluded that an offender could be separately punished for each without violating double jeopardy principles "because there is embodied within the penalty provision, W.Va. Code, 60A–4–401(a)(i), a separate definitional provision: 'a controlled substance ... which is a narcotic drug.'" *Id.* at 502, 308 S.E.2d at 142. We summarized as follows in syllabus point eight of *Zaccagnini:* "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *See also Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

We elaborated upon these principles in syllabus point seven of *Gill,* stating that "[a] claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment." In syllabus point eight of *Gill,* we further explained:

In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.

This determination based upon the elements of proof encompassed within the statutory framework was adeptly explained in *State v. Myers,* 171 W.Va. 277, 298 S.E.2d 813 (1982). "What we have described is essentially the 'same evidence' test, *see Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), applied to the double jeopardy bar against multiple punishments for the same offense." 171 W.Va. at 280–81, 298 S.E.2d at 817. Under this analysis, multiple punishments are permissible "as long as each charge meriting punishment requires at least one piece of evidence that is not needed to prove other charges." *Id.* at 281, 298 S.E.2d at 817.

In the present case, the Appellant was convicted of two violations emanating from the same criminal transaction. However, as in *Zaccagnini,* one conviction involved a narcotic drug and one conviction involved a non-narcotic drug. Each offense violates a separate provision of West Virginia Code § 60A–4–401(a) (1992), and each conviction is properly considered separate for purposes of punishment and the application of double jeopardy principles. Consequently, we find

no violation of double jeopardy principles and no error by the lower court in sentencing the Appellant to two separate, consecutive sentences for delivery of cocaine and delivery of marijuana.

## VI.

The Appellant also contends that the lower court erred in sentencing him to one to fifteen years for delivery of marijuana since the statutorily mandated punishment for that offense is only one to five years. The State concedes that the one to fifteen year sentence is inappropriate and that this matter should be remanded for resentencing to comport with the statute.

 As a related assignment of error, the Appellant maintains that the lower court improperly failed to consider factors outlined in *State v. Nicastro,* 181 W.Va. 556, 383 S.E.2d 521 (1989), prior to sentencing. In syllabus point six of *Nicastro,* we explained:

> Prior to imposition of a sentence of incarceration for a defendant convicted of delivery of less than 15 grams of marihuana in violation of *W.Va. Code,* 60A–4–401(a), as amended, who, although not within the 'without renumeration' exception of *W.Va. Code,* 60A–4–402(c), as amended, has no prior criminal record, a trial court must consider: (1) whether the defendant has a history of involvement with illegal drugs; (2) whether the defendant is a reasonably good prospect for rehabilitation; (3) whether incarceration would serve a useful purpose; and (4) whether available alternatives to incarceration, such as probation conditioned upon community service, would be more appropriate.

In the present case, the Appellant was convicted of delivering 5.76 grams of marijuana, and the presentence report indicated that the Appellant had no prior criminal convictions.[6] However, where an offender, as in the present case, is simultaneously convicted of a more serious offense, failure to consider the *Nicastro* factors is not reversible error. In such instance, the offender can no longer be

deemed a small-time offender engaged in only a negligible amount of marijuana delivery, and the rationale underlying the implementation of the *Nicastro* factors is no longer germane. A determination regarding the appropriateness of examination of those factors on remand is within the discretion of the lower court in this matter.

## VII.

 Finally, the Appellant asserts that the lower court manifested improper motives in imposing sentence and that the sentence was excessive and disproportionate to the offense committed. The Appellant correctly notes that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982). The Appellant asserts that the following statement by the lower court evidences an impermissible motivation allegedly compelling the lower court in its sentencing determination:

> We have several convictions of offenses which have caused great difficulty here in this area. We have found ourselves inundated with drugs from outside sources which has created a subculture of crime where there was none before. We even have had a police officer shot and wounded. Sort of things that one would expect in the metropolitan area has come to sleepy little Charles Town. And I don't know if there is anyway [sic] that we are ever going to be able to stop it, but I do know if the Courts don't lean on these issues when they come up, that we don't have any hope of ever stopping them.

The Appellant seeks to parlay this declaration into a discriminatory remark based upon the Appellant's status as a non-resident of West Virginia and as a Jamaican national. We find no justification for such an inference and discern no impermissible basis in the lower court's determination of sentence. We have previously recognized the pertinence of community impact as a consideration in sentencing. In *Nicastro,* for instance, we ex-

---

**6.** The Appellant has previously been charged with criminal conduct, but those charges were ultimately dismissed, and no criminal convictions were obtained.

plained that "[w]hether the controlled substance involved is of a type which creates a severe community problem may also be considered in sentencing." 181 W.Va. at 562, 383 S.E.2d at 527.

The Appellant also maintains that the sentence imposed upon him is excessive and disproportionate to the degree and character of the offense and to the sentences imposed upon other individuals involved in this same drug transaction. In syllabus point eight of *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), we recognized:

> Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offense.'

In syllabus point five of *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983), we explained:

> Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

We also identified two tests in *Cooper* for determining whether a sentence is so disproportionate that it violates Article III, Section five of the West Virginia Constitution. We explained as follows:

> The first [test] is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981):

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

172 W.Va. at 272, 304 S.E.2d at 857. In *State v. Ross*, 184 W.Va. 579, 402 S.E.2d 248 (1990), we described the second test slightly differently, explaining that "[w]hen it cannot be said that a sentence shocks the conscience, a disproportionality challenge should be resolved by more objective factors which include the consideration of the nature of the offense, the defendant's past criminal history, and his proclivity to engage in violent acts." 184 W.Va. at 581–82, 402 S.E.2d at 250–51.

The Appellant emphasizes that when comparing his sentence with those of the other individuals involved in this drug transaction, the excessiveness and disproportionality also becomes apparent. In syllabus point two of *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984), we stated:

> Disparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

Ms. Catherine Lohmeyer was convicted of possession of marijuana and was sentenced to six months incarceration which was suspended, permitting her to serve three years of probation. Mr. Lee Townsley pled guilty to delivery of marijuana and received a suspended sentence of one to ten years and three years probation. The Appellant, by contrast, was convicted of delivery of marijuana, delivery of cocaine, and conspiracy to deliver marijuana. Thus, for purposes of sentencing for their convictions, the Appel-

lant, Mr. Townsley, and Ms. Lohmeyer were not similarly situated. The Appellant's sentence of three to twenty-five years for the three violations for which he was convicted is not unconstitutional on the basis of either excessiveness or disproportionality.

Based upon the foregoing, we affirm the decision of the lower court, except to the extent that the one to fifteen year sentence for delivery of marijuana was statutorily improper. This matter will therefore be remanded for the correction of that sentencing error.

Affirmed in part, reversed in part, and remanded.