# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 13-0747** (Mercer County 13-F-99)

**Jackie Wayne Spaulding, Sr.,**
**Defendant Below, Petitioner**

**FILED**

March 28, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jackie Wayne Spaulding, Sr., by counsel Gerald R. Linkous, appeals the Circuit Court of Mercer County's June 26, 2013, Order denying petitioner's motion for a new trial following his conviction by jury of conspiracy to commit burglary and misdemeanor unlawful restraint. Petitioner was sentenced to concurrent terms of one to five years and one year in prison, respectively. Petitioner argues that the circuit court erroneously disallowed introduction of statements made by the victim to his son over the telephone that were allegedly overheard heard by prospective defense witnesses. The State of West Virginia, by counsel Benjamin F. Yancey, III, filed a summary response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following a jury trial, petitioner was convicted of conspiracy to commit burglary and unlawful restraint.[1] The victims, Stacy Dillon and her fiancé, Larry Dinger, testified to the events giving rise to petitioner's convictions. The evidence at trial revealed that on January 22, 2012, petitioner's son, Jackie Spaulding, II, placed a telephone call to Ms. Dillon, during which Mr. Dinger got on the phone and had a verbal altercation with petitioner's son.[2] During the conversation, petitioner's son threatened to come to Mr. Dinger's location (the local fire department) and beat him to death. After the conversation, Mr. Dinger telephoned petitioner,

---

[1]Petitioner was indicted on four charges: unlawful restraint, burglary, conspiracy to commit burglary, and assault. The jury found him not guilty of burglary and assault.

[2]Specifically, Mr. Dinger asked who was on the line, and petitioner's son replied, "None of your business, you mother-F'er." Mr. Dinger then said, "If I'm a MF'er I just left your mama's house."

1

whom he had known for over forty years, and asked him to come to the fire department to head off any trouble. Petitioner assured Mr. Dinger that he would take care of it and not to worry.[3]

The following day, January 23, 2012, Ms. Dillon and Mr. Dinger were at Ms. Dillon's trailer, along with Ms. Dillon's uncle, Kenney Ashbury. Ms. Dillon and Mr. Dinger were awakened by petitioner's son, who was in their bedroom. Petitioner's son pulled Mr. Dinger from the bed, attacked him, and said, "Wake up, B. Wake up, MF'er." At this point, Ms. Dillon ran into her living room to call for help. Mr. Ashbury was sitting in the living room and petitioner was also there. Petitioner had his hand behind his back and told Ms. Dillon to sit down and not to move because if she did, he "would blow a hole through [her]." When Ms. Dillon attempted to get up, petitioner repeated his threat to blow a hole through her and the couch. Petitioner threatened Mr. Ashbury in the same manner.

While Ms. Dillon was being held in the living room, petitioner's son was savagely beating Mr. Dinger in the bedroom. The entire trailer vibrated as petitioner's son stomped on Mr. Dinger. During the attack, petitioner encouraged his son, saying, "Kill him, Jackie. Stomp that mother f'er. Kill that son-of-a-B." Petitioner's son then came into the living room covered in blood, then left the trailer laughing.[4] As petitioner left, he told Ms. Dillon, "If the law gets called, I will kill everybody in this house and I will level off your trailer."

Ms. Dillon then called 911, went into the bedroom, and found Mr. Dinger bleeding from his ears, eyes, nose, and mouth, and with his teeth lying on the floor. Mr. Dinger was transported to the hospital where he underwent surgery. Both Ms. Dillon and Mr. Dinger gave statements to the police detailing the attack. During the investigation, the police were able to photograph footprints on the door of the trailer and the damage to the door frame and hinges, evidencing that the door had been kicked in.

At trial, petitioner testified in his defense. He claimed that over a two or three day period prior to the incident, Mr. Dinger had called several times, saying he was going to beat up petitioner's son. Petitioner testified that he received no calls from Mr. Dinger on the day of the attack, but visited the trailer with his son in the hope that Mr. Dinger "would shut up." Petitioner admitted that he figured a fight would occur; that his role during the fight was to "tell others to stay out;" and, that he told his son to "kick his ass," referring to Mr. Dinger. However, petitioner denied having a gun or preventing anyone from leaving or using the telephone. He also testified that Mr. Ashbury opened the door to let petitioner and his son enter the trailer.

Petitioner's appeal to this Court centers entirely on an evidentiary ruling by the circuit court at trial in which the court excluded evidence of telephone conversations prospective defense witnesses overheard between petitioner's son and Mr. Dinger. Those conversations took

---

[3]It appears that petitioner's son did not visit the fire department on January 22, 2012, as threatened.

[4]From the record, it appears that petitioner's son was shot and killed by a State Police Trooper who was attempting to arrest him about a week later on charges stemming from his attack on Mr. Dinger.

2

place approximately three days to a week prior to the attack on Mr. Dinger. The court allowed petitioner to vouch the record regarding the conversations with testimony out of the presence of the jury before making its ruling.[5] The gist of the conversations was that Mr. Dinger had made degrading and offensive remarks about petitioner's wife and family, and that Mr. Dinger invited a fight with petitioner's son. Petitioner wanted to introduce this evidence to explain his and his son's anger when they visited the trailer on January 23, 2012. The court ruled that the evidence was inadmissible hearsay and prevented its introduction before the jury.

Following the verdict, petitioner filed a motion for new trial centered on the court's ruling regarding the victim's statements to petitioner's son. During the hearing on petitioner's motion for a new trial, the court stated that regardless of what transpired during the phone calls in the days preceding the attack, it was undisputed that petitioner and his son went to the Dillon trailer and petitioner's son beat Mr. Dinger, causing serious injuries. The court stated that any error in excluding the evidence was harmless. The court then sentenced petitioner, and this appeal followed.

With respect to motions for new trial, we have held as follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 3, *State v. Vance,* 207 W.Va. 640, 535 S.E.2d 484 (2000).

Petitioner raises one assignment of error. He argues that the circuit court erred by excluding the testimony concerning statements made by Mr. Dinger that were overheard by the prospective defense witnesses because the statements were not hearsay. In Syllabus Point 10 of *State v Whittaker,* 221 W.Va. 117, 650 S.E.2d 216 (2007), we held that

> "[g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is

---

[5]The first witness, Grace Bailey, testified that she overheard four telephone calls from Mr. Dinger to petitioner's son. Ms. Bailey testified that the calls were made to petitioner's son's cell phone while she was with petitioner's son and that the phone was on speaker so she could hear what was said. The State objected when petitioner's counsel asked Ms. Bailey what Mr. Dinger said. Following a bench conference, the circuit court permitted the defense to vouch the record out of the jury's presence with Ms. Bailey' testimony, as well as three other individuals who had also overheard telephone calls between Mr. Dinger and petitioner's son, as to the content of the conversations between Mr. Dinger and petitioner's son.

hearsay but falls within an exception provided for in the rules." Syllabus point 1, *State v. Maynard,* 183 W.Va. 1, 393 S.E.2d 221 (1990).

"Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." Syl. Pt. 1, *State v. Kaufman,* 227 W.Va. 537, 711 S.E.2d 607 (2011) (citations omitted).

Petitioner contends the statements should have been admitted because they were not offered for the truth of what they asserted, but rather were offered for their effect on his and his son's state of mind. In this respect, we have held that

> [t]he concept of "original evidence" typically contemplates that "conversation[s] contemporaneous with the facts in controversy and explaining such fact[s] are admissible. . . . But they must be so connected with the main fact under consideration as to illustrate its character, to further its object, or to form in conjunction with it one continuous transaction." *Sample v. Consolidated Light & Ry. Co.,* 50 W.Va. 472, 478, 40 S.E. 597, 600 (1901) (internal quotations and citations omitted), *reh'g denied,* 50 W.Va. 472, 40 S.E. 694 (1902).

*Whittaker,* 221 W.Va. at 129, 650 S.E.2d at 228. "[M]erely stating that evidence is original evidence . . . does not by itself make it admissible." Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 802.02[1] at 8-96 (5th ed. 2012). "The statement must still be relevant and otherwise competent." *Id.* at 8-96 to 8-97.

In the present case, Mr. Dinger's statements over the telephone to petitioner's son days before the attack may have explained petitioner and his son's anger in visiting Ms. Dillon's trailer, but they were neither "contemporaneous with the facts in controversy" nor were they relevant. The trial in this case centered on the events that occurred in Ms. Dillon's trailer on January 23, 2012, and not on childish telephone calls between Mr. Dinger and petitioner's son in the days and possibly weeks before the incident. Stated another way, Mr. Dinger's derogatory comments did not in any way justify the conduct of petitioner's son in beating Mr. Dinger or in petitioner standing guard and encouraging his son in the attack. Accordingly, we do not believe the circuit court erred in prohibiting the testimony about Mr. Dinger's statements.

Further, assuming *arguendo* that the circuit court erred in deeming the statements inadmissible hearsay, we find such error to be harmless beyond a reasonable doubt. *See* Syl. Pt. 3, *State v. Keesecker,* 222 W.Va. 139, 633 S.E.2d 593 (2008) ("Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.").[6] With respect to the unlawful restraint charge,[7] the evidence

---

[6]The missing testimony was obviously harmless as it relates to the two charges for which petitioner was acquitted.

[7]West Virginia Code § 61-2-14g(a) defines unlawful restraint as follows:

revealed that petitioner went to the trailer with his son, with the knowledge that a fight might occur, and then prevented Ms. Dillon from leaving the living room to either break up the fight or call for help. Whether Mr. Dinger made derogatory comments about petitioner's family on the phone several days prior matters not to whether petitioner unlawfully restrained Ms. Dillon from leaving or for calling for help.

The same is true for the conspiracy charge.[8] The evidence demonstrated that petitioner and his son went to the trailer with the hope that Mr. Dinger "would shut up." While there, petitioner admits that he yelled to his son while he attacked Mr. Dinger. Importantly, Ms. Dillon did testify at trial to a phone conversation between petitioner's son and Mr. Dinger that occurred the day before the attack – the substance of which was much the same as the conversations petitioner complains were erroneously excluded – and the jury was not swayed in petitioner's favor. If anything, the prohibited evidence would have most likely bolstered the State's case with respect to the conspiracy. Therefore, any error in the circuit court's evidentiary ruling with respect to testimony about Mr. Dinger's statements was harmless.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 28, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

Any person who, without legal authority intentionally restrains another with the intent that the other person not be allowed to leave the place of restraint and who does so by physical force or by overt or implied threat of violence or by actual physical restraint but without the intent to obtain any other concession or advantage as those terms are used in section fourteen-a of this article is guilty of a misdemeanor and upon conviction shall be confined in jail for not more than one year, fined not more than $1,000, or both.

[8]West Virginia Code § 61-10-31, in pertinent part, states that, "[i]t shall be unlawful for two or more persons to conspire . . . to commit any offense against the State . . . if, . . . one or more of such persons does any act to effect the object of the conspiracy." The State "must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of the conspiracy." Syl. Pt. 3, in part, *State v. Broughton,* 196 W.Va. 281, 470 S.E.2d 413 (1996) (citation omitted).

5