# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0905**  (Wayne County 17-F-013)

**John H. B.,**
**Defendant Below, Petitioner**

**FILED**

**October 11, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner John H. B.,[1] by counsel[2] Juston H. Moore, appeals the April 17, 2018, Trial Order and the subsequent August 14, 2018, Sentence Order of the Circuit Court of Wayne County. Respondent State of West Virginia, by counsel Zachary Aaron Viglianco, filed a summary response in support of the circuit court's orders.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Petitioner had a minor child who provided testimony at the trial of this matter and is referenced in this decision. Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved with the case. *See In re K.H.* 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] Petitioner's counsel filed an appellate brief on petitioner's behalf. Nevertheless, petitioner, acting pro se, filed a hand-written two-page submission on or about February 6, 2019, alleging that an undue delay between the incident and his psychological evaluation resulted in an unfair and incorrect determination of criminal responsibility. Because petitioner's pro se submission does not comply with the West Virginia Rules of Appellate Procedure, we decline to consider it.

On October 19, 2016, petitioner was involved in a domestic disturbance at his home where he resided with his wife and two children, Drew and B.B. During the disturbance, petitioner discharged a firearm into the residence two times. Following this incident, the Wayne County Grand Jury returned a nine count indictment charging petitioner with six counts of wanton endangerment (Counts 1 through 6); attempted murder (Count 7); and two counts of gross child neglect creating risk of death or serious bodily injury (Counts 8 and 9).

Petitioner waived his right to a jury trial and this matter proceeded to a bench trial on March 26, 2018. At trial, petitioner presented an insanity defense that was rejected by the trial court. The State's evidence at trial showed that, on October 19, 2016, petitioner consumed a significant amount of alcohol and was described by his wife, both children, and the responding West Virginia State Trooper, as intoxicated or very drunk. After a conversation with his elder child, Drew, where Drew expressed concern over petitioner's increased level of drinking, petitioner became agitated and attempted to instigate an argument with Drew. When Drew declined petitioner's invitations to escalate the situation, petitioner became upset and ordered Drew to go to his bedroom.

Shortly thereafter, petitioner's wife came looking for Drew because he was supposed to assist in preparing dinner for the family. Per the State's evidence, petitioner informed his wife that she had "three minutes to talk to [Drew]." Petitioner's wife went to Drew's room and petitioner began demanding that Drew exit the room. Contemporaneous with petitioner's first demand that he come out, Drew heard "the sound of [a] gun being racked," that is, "the action being cycled and a round chambered." Drew testified that petitioner requested that he leave the bedroom "a few more times," and then petitioner fired a shot in the direction of Drew's bedroom where Drew and petitioner's wife were located. Petitioner also fired a shot toward the room of his younger child, B.B. The evidence presented at trial reflects that the bedrooms where the shots were fired were located close to one another, off of the same hallway. During the course of the exchange, petitioner's wife gave her cell phone to Drew and he dialed 9-1-1. As a result, Trooper Earl Ray Robinett of the West Virginia State Police arrived at the residence and arrested petitioner.

At trial, the State presented testimony from all of the victims and Trooper Robinett. At the close of the evidence, the trial court found petitioner guilty on all offenses charged in the indictment.

On April 27, 2018, the trial court held a sentencing hearing where it made an oral proclamation of petitioner's sentence. According to the court, petitioner was to be sentenced to a determinate period of incarceration of five years for each count of wanton endangerment; an indeterminate sentence of three to fifteen years for attempted murder; and an indeterminate period of one to ten years for each of the two counts of gross child neglect with risk of serious bodily injury. The trial court ordered that the sentences on Counts 1 through 3 would run concurrently with each other; that the sentences on Counts 4 through 6 would run concurrently with each other, but consecutively to Counts 1 through 3; and that the sentences on Counts 7 through 9 would run concurrently with each other, but consecutively to Counts 1 through 6.

On August 10, 2018, the trial court held a hearing for purposes of clarifying petitioner's sentence. The court stated that it had previously misspoken as to petitioner's sentence. Notably, the sentencing order had not yet been entered. During the hearing, petitioner's counsel asked the court to run each of the sentences concurrently. The trial court announced that he "misspoke . . . on the record as to making one of these matters consecutive, when [he] meant to make it

concurrent." The trial court corrected the sentences for Counts 8 and 9. Further, the circuit court ordered that the sentences for Counts 1 through 3 (wanton endangerment, with a determinate period of incarceration of five years) would run concurrently with each other; that the sentences for Counts 4 through 6 (wanton endangerment, with a determinate period of incarceration of five years) would run concurrently with each other, but consecutively to the sentences imposed for Counts 1 through 3; and that the sentence imposed for Count 7 (attempted murder, with a period of incarceration of not less than three years nor more than fifteen years) shall run consecutively to the sentences imposed for Counts 1 through 6; and that the sentences imposed for Counts 8 and 9 (gross child neglect creating risk of death or serious bodily injury, with a period of incarceration of not less than one year nor more than five years) shall run concurrently with each other, but consecutively to Counts 1 through 7. A sentencing order memorializing all of the foregoing was entered on August 15, 2018.

Petitioner raises two assignments of error on appeal: the sufficiency of the evidence as to three of his wanton endangerment convictions and double jeopardy as to his sentence. We will address each in turn.

Petitioner was found guilty of six counts of wanton endangerment. He challenges the sufficiency of the evidence as to three of the counts of wanton endangerment, notably conceding that the remaining three counts of wanton endangerment were proven at trial. He argues that the evidence presented at trial supports a conviction for one count of wanton endangerment for each of the three victims, instead of two counts for each victim. We disagree.

Wanton endangerment is a statutory crime codified at West Virginia Code § 61-7-12. This Court has outlined the elements of wanton endangerment as follows: "(1) the defendant; (2) did wantonly perform; (3) with a firearm; (4) an act; (5) creating substantial risk of; (6) death or serious bodily injury to another." *State v. Wright*, 200 W. Va. 549, 553, 490 S.E.2d 636, 640 (1997).

Petitioner's challenge is to the latter elements, specifically whether each victim was subjected to a substantial risk of death or serious bodily injury from both shots that petitioner fired. Petitioner argues that each victim only faced a substantial risk of death or serious injury from one gunshot, not two. At the core of petitioner's argument is the contention that the first shot was not fired directly at B.B. and the second shot was not fired directly at Judith and Drew. Accordingly, petitioner argues that the elements of the crime were not satisfied, and, thus, do not support three of the convictions of wanton endangerment.

We have held that

"[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases

are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 5, *State v. Broughton*, 196 W. Va. 281, 470 S.E.2d 413 (1996).

Upon a review of the record, this Court finds that the evidence was sufficient to support a finding that petitioner placed all three victims in substantial danger both times he discharged the firearm into his home. For the purpose of this analysis, all the evidence must be viewed in the light most favorable to the prosecution. *Id.* The testimony of the victims and Trooper Robinett support a finding that the bedrooms where petitioner fired the shots were in close proximity to one another. Thus, the trial court did not err in finding that both shots placed each of the three victims at substantial risk of death or serious injury. Accordingly, we find the evidence was sufficient to support petitioner's convictions on all six counts of wanton endangerment.

Petitioner next asserts that the trial court subjected him to double jeopardy by amending the terms of the sentence after the April 27, 2018, sentencing hearing. Petitioner's double jeopardy claim is reviewed de novo. *See* Syl. pt. 1, *State v. Sears*, 196 W. Va. 71, 468 S.E.2d 324 (1996).

In order to establish a double jeopardy claim, a defendant must first present a *prima facie* claim that double jeopardy principles have been violated. Once the defendant proffers proof to support a nonfrivolous claim, the burden shifts to the State to show by a preponderance of the evidence that double jeopardy principles do not bar the imposition of the prosecution or punishment of the defendant.

*Id.* at 75, 468 S.E.2d at 328. After our review of the record, we find petitioner has not established a prima facie claim of double jeopardy. This Court has explained:

The Double Jeopardy Clause of the West Virginia Constitution provides, in part: "No person shall . . . be twice put in jeopardy of life or liberty for the same offence." W. Va. Const. art. 3, § 5. This clause historically has served the function of preventing both successive punishments and successive prosecutions and bars an accused from being twice punished for the same offense and from being twice tried for it. *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 306-07, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311, 323-24 (1984); *State v. Rummer,* 189 W. Va. 369, 432 S.E.2d 39 (1993); *State v. Hersman,* 161 W. Va. 371, 242 S.E.2d 559 (1978); *Conner v. Griffith,* 160 W. Va. 680, 238 S.E.2d 529 (1977). Thus, it can be said that the Double Jeopardy Clause "prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938), *abrogation on other grounds recognized by United States v. Sanchez–Escareno,* 950 F.2d 193 (5th Cir.1991). Indeed, in *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872, 876 (1874), the United States Supreme Court stated: "If there is anything settled in the jurisprudence of England and America, it is that no man [or woman] can be twice lawfully punished for the same offence."

*Sears*, 196 W. Va. at 75, 468 S.E.2d at 328.

Simply put, the double jeopardy clause is not implicated in petitioner's case because he did not receive either successive punishments or successive prosecutions. Although the trial court made a verbal announcement of petitioner's sentence, it indicated in open court that, in the "next

week or so, there'll be an Order entered in your file that imposes this sentence on you, states what the [c]ourt's sentence was." This Court finds that petitioner's argument is fundamentally flawed inasmuch as the trial court expressly indicated that the pronouncement during the hearing would not be final until a written order was entered, and further, its oral pronouncement was not tantamount to a formal imposition of sentence.

This Court has repeatedly recognized and reaffirmed that "[i]t is a paramount principle of jurisprudence that a court speaks only through its order." *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006); *see also State ex rel. Erlewine v. Thompson*, 156 W. Va. 714, 718, 207 S.E.2d 105, 107 (1973). Since petitioner's sentence was not finalized until an order issued, and no order was entered by the court until after the August hearing, the court's sentence was not "modified" as alleged by petitioner. While we have also stated that a court's "oral order has the same force, effect, and validity in law as a written order," *Moats v. Preston Cty. Comm'n*, 206 W. Va. 8, 13, 521 S.E.2d 180, 185 (1999), we have made clear that "where a circuit court's written order conflicts with its oral statement, the written order controls." *Legg*, 219 W. Va. at 483, 637 S.E.2d at 581.

Here, the trial court held a hearing for the distinct purpose of clarifying petitioner's sentence because the court believed it had previously misspoken on the record and caused "some confusion . . . as to the sentence" imposed on petitioner. Thus, upon a review of the record as a whole, we find that the trial court acted within its authority and did not subject petitioner to double jeopardy when it clarified petitioner's sentence by entering its written sentencing order.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 11, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

5