490 S.E.2d 636

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Robert Jack WRIGHT, Defendant Below, Appellant.**

No. 23741.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1997.

Decided July 10, 1997.

Darrell V. McGraw, Jr., Attorney General
Victor S. Woods, Assistant Attorney General,
Charleston, for Appellee.

Daniel R. James, Barr & James, Keyser, for Appellant.

PER CURIAM:

Robert Jack Wright appeals his convictions of malicious assault (*W. Va. Code*, 61–2–9(a) [1978] ), attempted murder (*W. Va. Code*, 61–2–1 [1991] and 61–11–8(1) [1994] ) and wanton endangerment with a firearm (*W. Va. Code*, 61–7–12 [1994] ). Mr. Wright was convicted of the three crimes after a bench trial in the Circuit Court of Hampshire County and his sentence was based on his three convictions. On appeal, Mr. Wright alleges the following assignments of error: (1) the principles of double jeopardy were violated by his convictions of wanton endangerment and malicious assault because, in this case, both convictions are based on one act involving the use of a firearm; (2) venue was not established; and (3) the evidence presented by the State was insufficient to support his convictions. Although the State confesses error on the double jeopardy issue, the State maintains the other assignments of error are without merit. Based on our review of the record, we find no merit in Mr. Wright's assignments of error concerning venue and insufficient evidence, but we agree with the parties that the double jeopardy prohibition was violated in this case. Because of our holdings, we affirm, in part, reverse, in part and remand this case for resentencing consistent with this opinion.

I.

*Facts and Background*

On the evening of May 10, 1995, Mr. Wright shot and wounded Paul Grigg, an acquaintance of Mr. Wright. The victim was shot with a .38 caliber derringer outside the victim's residence in the town of Romney, the county seat of Hampshire County. The circumstances leading to the shooting were disputed.

Mr. Wright maintains that he went to the victim's home in order to give the victim, who was his friend, a gun as a wedding present. Apparently Mr. Grigg was engaged to marry a former girlfriend of Mr. Wright. Mr. Wright testified that he had no problem with the new couple, and the victim testified that until the day of the shooting, he was unaware of any problem. According to Mr. Wright, as he pulled the gun from his front pants' pocket to show to the victim, the gun accidentally discharged injuring the victim.

According to the victim, he first met Mr. Wright several weeks earlier at the local American Legion Post. The victim testified that on May 10, 1995, Mr. Wright telephoned him and said, "This is Jack. I'm ready for a piece of your a__. I'm over at the Legion. Come on over." About an hour after the telephone call, Mr. Wright appeared at the victim's residence. The victim stepped outside his home, and the two men walked about 15 to 25 feet toward Mr. Wright's car. The victim testified that Mr. Wright was angry with him and gave the following description of the conversation leading to the shooting: "And then he [Mr. Wright] proceeded to say ... 'When I get mad, I'm mad.' And said ... 'I don't f__ around,' is what he said.... Just real shortly, then, the gun, hands went up, and a gun went off, and I was shot."

The victim testified that he thought Mr. Wright was trying to kill him. Mr. Wright testified that the shot went off when "I was pulling the gun out to give it to the man. I had no beef against Mr. Grigg [the victim]." Mr. Wright thought the gun malfunctioned and accidentally discharged when his "finger brushed against the trigger" while the gun was in the half-cocked safety position.

Clarence Lane, the State's firearm expert, testified that the gun was in good working order and that "this particular gun won't go off in a half-cocked position."

Mr. Wright was indicted on three counts: malicious assault, attempted murder, and wanton endangerment. After Mr. Wright waived his right to a jury trial, a bench trial was held in the Hampshire County Circuit Court. The circuit court found Mr. Wright guilty on all counts and sentenced him to serve two to ten years for malicious assault and one to five years for attempted murder with these sentences to run consecutively, and to serve one to five years for wanton endangerment, with this sentence to run concurrently with the other two.

Mr. Wright appealed to this Court alleging: (1) the double jeopardy prohibition applies to his convictions and punishments for both malicious assault and wanton endangerment; (2) venue was not established; and (3) the evidence was not sufficient to support his convictions.

## II.

### Discussion

### A.

### Double Jeopardy

■ "The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution,* provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." Syllabus Point 1, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977). *Accord* Syllabus Point 5, *State v. Johnson,* 197 W.Va. 575, 476 S.E.2d 522 (1996); Syllabus Point 7, *State v. Broughton,* 196 W.Va. 281, 470 S.E.2d 413 (1996); Syllabus Point 2, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992). Article III, § 5 of the *W.Va. Const.* states, in pertinent part: "[N]or shall any person, in any criminal case ... be twice put in jeopardy of life or liberty for the same offence."

■ We review *de novo* claims regarding the double jeopardy prohibition. Syllabus Point 1, in part, *State v. Sears,* 196 W.Va. 71,

468 S.E.2d 324 (1996) states that "a double jeopardy claim ... [is] reviewed *de novo.*"

■ In this case, Mr. Wright claims his convictions for wanton endangerment[1] and malicious assault[2] are predicated upon a single gunshot, which makes wanton endangerment a lesser-included offense of malicious assault.[3] In its brief, the State conceded "that the Defendant cannot be punished for both crimes."

In *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992), we noted that the double jeopardy proscription does not prohibit multiple punishments for the same offense when a contrary legislative intent has been clearly expressed. In *Gill,* we found such legislative intent clearly expressed in the declaration of "a separate and distinct offense under" *W.Va.Code,* 61–8D–5(a) for sexual abuse involving parents, custodians or guardians. 187 W.Va. at 143, 416 S.E.2d at 260. Syllabus Point 7 of *Gill* states:

A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment.

■ To determine legislative intent, a court should examine the language of the criminal statutes at issue and, if necessary, the legislative history to determine if there is a clear expression of legislative intent to aggregate sentences for related crimes. Syllabus Point 8 of *Gill* states:

In ascertaining legislative intent, a court should look initially at the language of the

---

1.  The crime of wanton endangerment is set forth in *W.Va.Code,* 61–7–12 [1994], which provides:

    Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or fined not less than two hundred fifty dollars nor more than two thousand five hundred dollars, or both.

    For purposes of this section, the term "firearm" shall have the same meaning ascribed to such term as set forth in section two [§ 61–7–2] of this article.

2.  The crime of malicious assault is set forth in *W.Va.Code,* 61–2–9(a) [1978], which provides, in pertinent part:

    If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years.

3.  *See* Syllabus Point 2, *State v. George,* 185 W.Va. 539, 408 S.E.2d 291 (1991) (convictions for malicious assault and attempted murder do not violate the proscription against double jeopardy because "each offense require[s] proof of an additional fact which the other does not").

involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.

*Accord* Syllabus Point 6, *State v. Rahman*, 199 W.Va. 144, 483 S.E.2d 273 (1996); Syllabus Point 10, *State v. Broughton, supra.*

■ "Absent evidence to the contrary, it is presumed the Legislature did not intend to punish the same offense under two statutes." *State v. Sears*, 196 W.Va. at 82, 468 S.E.2d at 335. Given the language of the wanton endangerment and the malicious assault statutes (*see* notes 1 and 2 for the respective code provisions), we find no "clear expression of [a legislative] ... intention to aggregate sentences" in these matters. Syllabus Point 8, in part, *State v. Gill.*

■ Next, we consider if the same act can constitute both an offense of wanton endangerment and an offense of malicious assault. Our traditional test for determining if the act is one or two offenses is stated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Blockburger* test is stated in Syllabus Point 4 of *State v. Gill*, which provides:

> "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

*Accord* Syllabus Point 6, *State v. Johnson, supra;* Syllabus Point 8, *State v. Broughton, supra;* Syllabus Point 8, *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983).

In the abstract, convictions of both wanton endangerment and malicious assault do not always constitute double jeopardy because wanton endangerment with a firearm requires proof of an additional element, namely use of a firearm. Malicious assault does not necessarily require use of a firearm. *See* notes 1 and 2, for the respective code provisions.

However, in this case, both convictions are predicated on a single act involving a single gunshot. In this case, the elements of wanton endangerment include: (1) the defendant (2) did wantonly perform (3) with a firearm (4) an act (5) creating substantial risk of (6) death or serious bodily injury to another. *See* note 1 for provisions of *W.Va.Code*, 61–7–12 [1994]. And in this case, the elements of malicious assault include: (1) the defendant (2) maliciously (3) shot with a firearm [statute says "shoot, stab, cut or wound"] (4) causing bodily harm to the victim (5) with intent to main, disfigure, disable or kill. *See* note 2 for the provisions of *W.Va.Code*, 61–2–9(a) [1978]; *State v. George*, 185 W.Va. at 543, 408 S.E.2d at 295. The malicious assault charge, in this case, was based entirely upon Mr. Wright's use of a firearm.

■ Given the circumstances of this case, it would have been impossible for Mr. Wright to commit malicious assault with a single gunshot without committing wanton endangerment with a firearm. Syllabus Point 1 of *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982) outlines the test for determining a lesser included offense.

> "The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." Syllabus Point 1, *State v. Louk*, [169] W.Va. [24], 285 S.E.2d 432 (1981) [, *overruled on other grounds, State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244 (1994) ].

Wanton endangerment also carries a less severe penalty than malicious assault. "An offense, in order to be a lesser included

offense, must be a less serious crime in terms of its classification and degree...." 42 *C.J.S.* Indictments and Information § 218 (1991).

Given the circumstances of this case, we find that wanton endangerment is a lesser included offense because it would have been impossible for Mr. Wright to have committed malicious assault without first having committed wanton endangerment. Based on our holding, we find that the circuit court erred in convicting and sentencing Mr. Wright to both malicious assault and wanton endangerment. Rather, Mr. Wright's conviction and sentence should have been limited to attempted murder and either malicious assault or wanton endangerment. On remand, the circuit court is directed to resentence Mr. Wright in a manner consistent with this opinion.

### B.

### *Venue*

■ Mr. Wright alleges that the State failed to establish venue in Hampshire County. The State maintains the circuit court correctly took judicial notice of proper venue based on the testimony of several witnesses that the crime took place in Romney, the county seat of Hampshire County.

Article 3, § 14 of the *W.Va. Const.* provides that "[t]rials of crimes ... unless herein otherwise provided, shall be ... in the county where the alleged offence was committed...." *See State v. Adams*, 193 W.Va. 277, 285, 456 S.E.2d 4, 12 (1995) (discussing a similar venue question); Rule 18 [1981] of the *West Virginia Rules of Criminal Procedure.*

Because the record shows that the crime took place in Hampshire County, we find no merit in this assignment of error concerning venue.

### C.

### *Insufficient Evidence*

■ In his final assignment of error, Mr. Wright maintains that the evidence was insufficient to prove beyond a reasonable doubt that the shooting was not accidental. The State maintains that there was sufficient direct and circumstantial evidence to support the circuit court's conclusion that Mr. Wright purposely shot the victim.

■ The standard for reviewing the sufficiency of evidence is stated in Syllabus Point 1 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), which states:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

*Accord* Syllabus Point 1, *State v. Hughes*, 197 W.Va. 518, 476 S.E.2d 189 (1996); Syllabus Point 1, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

In this case, when the evidence is viewed in the light most favorable to the prosecution, there was sufficient evidence for a rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt. Mr. Wright's contention of an accidental shooting did not comport with either the testimony of the firearms expert or the victim. The firearms expert testified that the gun would only discharge from a fully-cocked position with the safety disengaged. The victim testified that about 45 minutes before the shooting Mr. Wright telephoned him and sounded angry about a reported problem between the men. The victim also testified about the conversation with Mr. Wright immediately before the shooting. The record does indicate that Mr. Wright testified that the shooting was accidental and that he did not leave the shooting scene.

When we examine this case's evidence in the light most favorable to the prosecution, we find sufficient evidence for a rational trier of fact to find the essential elements of the crimes of attempted murder and malicious wounding or wanton endangerment to be

proved beyond a reasonable doubt. Syllabus Point 1, *State v. Guthrie, id.* Based on our finding, we conclude that Mr. Wright's assignment of error concerning the sufficiency of evidence is without merit.

For the above stated reasons, the decision of the Circuit Court of Hampshire County is affirmed, in part, reversed, in part and remanded for sentencing consistent with this opinion.

Affirmed, in part, Reversed, in part and Remanded.