# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**September 2, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Timothy Stewart,**
**Petitioner Below, Petitioner**

**vs)   No. 15-0609** (Mercer County 15-C-80)

**Patrick Mirandy, Warden,**
**St. Mary's Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Timothy Stewart, pro se, appeals the May 29, 2015, order of the Circuit Court of Mercer County summarily denying his petition for a writ of habeas corpus. Respondent Patrick Mirandy, Warden, St. Mary's Correctional Center, by counsel David A. Stackpole, filed a response,[1] and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and Gayle Dunn were romantically involved and, prior to February 2, 2013, Ms. Dunn was living at petitioner's residence. On February 2, 2013, petitioner and Ms. Dunn began arguing. Ms. Dunn eventually slapped petitioner in the face. Petitioner reacted by hitting Ms. Dunn in the back of the head and putting her in a choke hold that caused her to lose consciousness. After she regained consciousness, Ms. Dunn packed her things and left.

---

[1]To the extent that Respondent Mirandy, in his capacity as the warden of St. Mary's Correctional Center, is represented by the West Virginia Attorney General's Office, we will hereinafter refer to respondent as "the State."

1

After petitioner and Ms. Dunn exchanged text messages, Ms. Dunn returned to petitioner's residence during the night of February 3, 2013, because she did not want to end their relationship on "such a bad note." Petitioner and Ms. Dunn again began arguing. According to Ms. Dunn's police statement,[2] petitioner struck her several times. At one point, petitioner held Ms. Dunn down and told her that if she left the residence, he would kill her. Ms. Dunn was eventually able to lock petitioner in the basement while she called 9-1-1.

Petitioner freed himself from the basement by using an axe to break down the door. Petitioner retrieved a .38 caliber revolver. Petitioner tackled Ms. Dunn as she was trying to leave the residence "and fired a single shot in a downward motion by her face." Petitioner then put the gun to Ms. Dunn's head and told her that "she knew where the next one would be." Ms. Dunn believed that petitioner was trying to recite the Lord's Prayer to her when the police knocked on the residence's door. Petitioner "got scared when [the police] knocked on the door and hopped up and went and hid the gun." After petitioner got off her, Ms. Dunn unlocked the door and let the police inside the residence.

On June 11, 2013, petitioner was indicted on two felony charges (wanton endangerment and attempted first degree murder) and three misdemeanor charges (unlawful restraint, domestic battery, and domestic assault) based on the events of February 3, 2013. On August 26, 2013, the circuit court held a hearing pursuant to Rule 404(b) of the West Virginia Rules of Evidence as to whether evidence of the February 2, 2013, incident where petitioner choked Ms. Dunn into unconsciousness would be admissible evidence at petitioner's trial. The State argued that the choking incident showed an intent to kill Ms. Dunn, and Ms. Dunn testified that she felt that the February 2, 2013, incident "led up to" the events of February 3, 2013. As the hearing evolved, Ms. Dunn gave testimony as to what occurred on February 3, 2013. Ms. Dunn confirmed that after firing a shot by her head, petitioner "put the gun back to my head and said you know where the next one is going to go" and that that was "right before the police showed up."

Petitioner subsequently decided to plead guilty to all counts of the indictment except for the attempted first degree murder count. The circuit court took petitioner's guilty pleas as to unlawful restraint, domestic battery, domestic assault, and wanton endangerment on November 6, 2013. At that hearing, petitioner testified that those guilty pleas represented "what I feel like I've done" and constituted the reason he was unwilling to plead guilty to attempted murder. After the circuit court found that petitioner voluntarily and intelligently pled guilty and deferred sentencing on those counts, petitioner's counsel argued that those counts should not be mentioned at trial on the attempted murder charge. In response, the State argued, as follows:

> [THE STATE]: Well, Your Honor, there are . . . there are two acts that the State would demonstrative of [petitioner]'s intent to kill Ms. Dunn. One of the strangling to unconsciousness [the previous day], the other one is the firing of the

---

[2]Ms. Dunn's police statement was relayed to the grand jury through the testimony of Sergeant E.T. Pugh of the Princeton, West Virginia, Police Department.

firearm into the floor *and then putting the firearm to the back of her head and telling her to recite the Lord's Prayer after he told her the next one is coming for her head.*

(Emphasis added.). The circuit court took the matter under advisement and scheduled a final pretrial conference for November 12, 2013.

At the beginning of the November 12, 2013, pretrial conference, petitioner's counsel informed the circuit court that petitioner decided to plead guilty to the attempted murder charge. As the circuit court had with the previous pleas, the circuit court engaged petitioner in a colloquy pursuant to *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975). The circuit court informed petitioner that if he went to trial on the attempted murder charge, the State would have to prove that he "deliberately and intentionally" tried to kill Ms. Dunn. The circuit court asked petitioner, "Do you understand that?" Petitioner answered, "Yes, sir." The circuit court subsequently inquired whether petitioner still desired to enter his guilty plea. Petitioner responded, "Yes, sir." The circuit court then asked petitioner's counsel if there was any reason that petitioner should not plead guilty to attempted first degree murder. Petitioner's counsel answered, "No, Judge."

Immediately thereafter, the circuit court read count two of the indictment, which stated that petitioner "deliberately [and] intentionally" tried to kill Ms. Dunn, and asked for petitioner's plea. Petitioner responded, "Guilty." The circuit court found that there was a factual basis for petitioner's guilty plea given "the evidence the Court's heard in the suppression hearing." Next, the circuit court inquired whether petitioner had any complaints about his counsel's performance. Petitioner answered, "No, sir." Finally, the circuit court asked petitioner if he wanted the court to accept his guilty plea. Petitioner responded, "Yes, sir." The circuit court accepted petitioner's plea and adjudged him guilty of attempted first degree murder.

Subsequently, the circuit court sentenced petitioner to a determinate term of five years of incarceration for wanton endangerment and to an indeterminate term of three to fifteen years of incarceration for attempted first degree murder. The circuit court also sentenced petitioner on his three misdemeanor convictions, but found that those sentences had been satisfied by the time petitioner spent incarcerated during the pendency of his case. The circuit court ordered that petitioner serve his felony sentences consecutively.

On March 6, 2015, petitioner filed a petition for a writ of habeas corpus alleging (1) double jeopardy; (2) inadequate factual basis for acceptance of petitioner's guilty plea to attempted first degree murder;[3] and (3) ineffective assistance of counsel. By an order entered May 29, 2015, the

---

[3]Petitioner labeled this claim as one based on "actual innocence." However, we agree with respondent that petitioner misused the term "actual innocence." *See State ex rel. Smith v. McBride*, 224 W.Va. 196, 208 n.44, 681 S.E.2d 81, 93 n.44 (2009) (describing "actual innocence" as term of art developed in federal jurisprudence).

circuit court found no merit to petitioner's grounds for relief[4] and summarily denied his habeas petition.

Petitioner now appeals the circuit court's May 29, 2015, order denying his habeas petition. We apply the following standard of review in habeas appeals:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

On appeal, petitioner makes two assignments of error: (1) that the circuit court erred in not holding an evidentiary hearing on his habeas petition; and (2) that petitioner's counsel was ineffective in advising that there was no reason for petitioner not to plead guilty to attempted murder when (a) a conviction on that count was barred by the Double Jeopardy Clause of the United States and West Virginia Constitutions[5] and (b) an inadequate factual basis existed for the circuit court's acceptance of petitioner's guilty plea to attempted murder.

With regard to petitioner's first assignment of error, we held in Syllabus Point 1 of *Perdue*

---

[4]The circuit court's rulings regarding each claim will be discussed *infra*.

[5]In Syllabus Points 1 and 2 of *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992), we held, as follows:

> 1. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

> 2. "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." Syllabus Point 1, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977).

*v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973), that a circuit court may deny a habeas petition without an evidentiary hearing and appointment of counsel "if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." With regard to petitioner's second assignment of error, we note that, in West Virginia, claims of ineffective assistance of counsel are governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

We consider whether there was a double jeopardy violation together with whether an adequate factual basis existed for petitioner's guilty plea to attempted murder because petitioner makes substantially the same argument with regard to both claims. With regard to double jeopardy, petitioner contends that this is a "single gunshot case"[6] where a single shot provided the factual foundation for both the wanton endangerment charge and the attempted murder charge. With regard to his claim that an independent factual basis was lacking for the attempted murder charge, petitioner contends that, while he fired the gun by Ms. Dunn's head and put it back to her head, he never fired it a second time.

The State concedes that the shot fired by Ms. Dunn's head provided the basis for the wanton endangerment charge, but argues that the attempted murder charge had a different factual predicate. The State asserts that petitioner committed attempted first degree murder by putting the firearm back to Ms. Dunn's head and telling her to recite the Lord's Prayer after he told her the next one was coming for her head.[7] The State further asserts that the only reason that petitioner did not complete the crime of first degree murder was that the police knocked on the door and startled him.

We find that the attempted murder charge had a different factual predicate than the wanton endangerment charge. We also agree with the circuit court's determination that Ms. Dunn's testimony at the August 26, 2013, hearing—that petitioner put the gun back to her head and said you know where the next one is going to go right before the police showed up—"in conjunction with other facts and evidence of the record form a sufficient factual basis for the [circuit court] to [have accepted] the plea to attempted murder." Similarly, there was no double jeopardy violation because an independent basis existed for finding that petitioner intended to kill Ms. Dunn in that he put the gun back to her head and would have completed the crime "had the police not responded so

---

[6]*See State v. Wright*, 200 W.Va. 549, 553, 490 S.E.2d 636, 640 (1997) (finding that, given the circumstances of that case, it would have been impossible for defendant to commit malicious assault with single gunshot without committing wanton endangerment with a firearm).

[7]Petitioner contends that the State never made this argument in his criminal case. However, we find that the State argued that petitioner putting the gun back to Ms. Dunn's head provided the factual predicate for the attempted murder charge at the November 6, 2013, hearing.

quickly to the victim's 9-1-1 call." Given that petitioner's substantive arguments lack merit, we determine that the circuit court did not err in finding that petitioner's counsel was not ineffective in advising that there was no reason for petitioner not to plead guilty to attempted murder and in finding that no evidentiary hearing "[was] needed to resolve [petitioner's] issues." Therefore, we conclude that the circuit court did not err in denying petitioner's habeas petition.

For the foregoing reasons, we affirm the circuit court's May 29, 2015, order summarily denying petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** September 2, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

6