# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 18-1069** (McDowell County 18-F-35 and 18-F-36)

**Devonte Ryshad Woods,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Devonte Ryshad Woods, by counsel Thomas H. Evans III, appeals the November 8, 2018, Order of the Circuit Court of McDowell County sentencing him as a youthful offender to the Anthony Center for not less than six months, nor more than two years upon his convictions for seven counts of wanton endangerment with a firearm and two counts of gross child neglect creating a substantial risk of bodily injury. Respondent, the State of West Virginia, by counsel Andrea Nease Proper, filed a response in support of the circuit court's sentencing order. On appeal, petitioner argues that the circuit court committed reversible error when it failed to grant a judgment of acquittal at the close of the State's case-in-chief and again at the conclusion of all the evidence, and when it failed to declare a mistrial due to improper remarks, improper evidence, misconduct by the State in regard to the jury, and juror misconduct. Petitioner also argues that West Virginia Code § 61-7-12 is unconstitutional and void for vagueness.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 20, 2018, petitioner was indicted on three counts of wanton endangerment with a firearm, two counts of gross child neglect creating substantial risk of serious bodily injury, one count of brandishing a deadly weapon[1] and one count of battery for a July 10, 2017, shooting. Petitioner was also indicted on four counts of wanton endangerment with a firearm and one count

---

[1]This charge was dropped or dismissed prior to going to the jury.

1

of brandishing a deadly weapon[2] for an August 29, 2017, shooting.

Petitioner's trial began on August 8, 2018. Regarding the July 10, 2017, shooting, the State presented the testimony of Tracie Casey, who is the mother of petitioner's former girlfriend, Rhya Casey, and the grandmother of petitioner's son with Ms. Casey. On the day in question, petitioner got into an argument with Rhya Casey at their home. Rhya Casey had just returned from the store with her mother and two children, one of whom is petitioner's child. Upon learning that petitioner had been unfaithful, Rhya Casey began loading bags into her mother's car in order to leave petitioner. Petitioner approached the car and demanded that his child be returned to him. Tracie Casey testified at trial, that after blocking petitioner's access to the vehicle, petitioner said "I got something for you" and ran back into the house. At that time, Tracie Casey began to leave with the children. She testified that as she was driving away, she saw petitioner on the porch and heard gun shots. She further testified that although she did not see petitioner fire the gun, Rhya Casey was standing in the yard and would not have had time to go back into the house to retrieve the gun herself.

Rhya Casey testified at trial that she and petitioner got into an argument after she suspected him of being unfaithful. Rhya Casey stated that after her mother left the house with her children on July 10, 2017, she went inside, got the gun off of the dresser, and fired shots toward the mountainside as a warning to petitioner. Rhya Casey stated that the first time she shot the gun was when she was standing in the road beside the house. After she was arrested, she was placed in the back of a police vehicle. At that point, her mother and grandfather were on the scene. Rhya Casey alleged that they talked to her while she was in the police car and told her to tell the police that petitioner was the one who fired the shots. Rhya Casey stated that she initially told the police officers that petitioner fired the shots because she was afraid of losing her children if she admitted that she fired the pistol.

Vanessa Wilkes testified at trial that she lives near petitioner and heard two pistol shots while she was inside her home on July 10, 2017. Several minutes later, she went outside and saw petitioner walking behind Rhya Casey down the street. Wilkes heard petitioner demand the gun and Rhya Casey refused. She kept walking until police stopped her, took the gun, and arrested her.

West Virginia State Trooper E. W. Boothe also testified at trial. He stated that he received a call about shots fired at the Woods/Casey residence and, upon arriving at the scene, found Rhya Casey holding a gun. She gave Trooper Boothe the weapon and was placed in the backseat of his vehicle. Trooper Boothe stated that he was on the scene for thirty-two minutes and in view of his vehicle at all times. He testified that no one was allowed in or out of the vehicle during that time and that the windows were rolled up. He stated that he saw no one but police officers near the vehicle while Rhya Casey was inside. Trooper Boothe located five shells on the scene: one in the yard, one just off the front patio, and three in the roadway. He testified that he believed petitioner fired the shells found in the yard and off the front patio, while Rhya Casey fired the three found in the road. Trooper Boothe testified that Rhya Casey was not arrested while she was in custody because statements from her, Ms. Wilkes, and Tracie Casey were all consistent and indicated Rhya

---

[2]This charge was dropped or dismissed prior to going to the jury.

Casey was just protecting her family.

Regarding the August 29, 2017, shooting, the State presented the testimony of Ivan Scott. Mr. Scott testified that he and Kevin Mitchem were walking home on the day in question when they passed petitioner and Jamal Porterfield on the street. Mr. Scott testified that they "had some words" with petitioner and then went to the home of Kimberly and Larry Jennings. Later that evening, petitioner and Jamal Porterfield went to the Jennings' home and a fight broke out between petitioner, Mr. Porterfield, Mr. Mitchem, and Mr. Scott. Mr. Scott testified that petitioner and Mr. Porterfield left the home, returned approximately twenty minutes later with a gun, and began shooting. Mr. Scott stated that he ran upstairs and did not know who fired the gun. Mrs. Mrs. Jennings stated that on the night of August 29, 2017, she, Mr. Mitchem, Mr. Scott, and Mr. Jennings were inside her home when someone began firing shots into the home. She called 9-1-1 because Mr. Mitchem was hit with a bullet. Mrs. Jennings testified that she told 9-1-1 the shooter was petitioner because her brother told her it was petitioner. Mrs. Jennings did not actually see the shooter.

Mr. Jennings testified at trial that, on the evening in question, someone started shooting into his home. He went outside and saw Mr. Porterfield and petitioner. Mr. Jennings testified that Mr. Porterfield had the gun but did not shoot it. He then saw petitioner take the gun from Mr. Porterfield and shoot at the house. Mr. Jennings told police officers on the scene that Mr. Porterfield pulled the gun out, but that petitioner was the one who shot at the home. Mr. Jennings testified that petitioner was forty to fifty feet away from him, but that there was a streetlight right where petitioner and Mr. Porterfield were standing. On cross-examination he admitted that he has seizures that affect his memory.

Petitioner testified at trial that on the evening of August 29, 2017, he was spending time with Mr. Porterfield when Mr. Scott and Mr. Mitchem stopped by petitioner's home and began using offensive language directed at petitioner and Mr. Porterfield. Petitioner stated that he and Mr. Porterfield went to the Jennings' home later that evening and got into a physical altercation with Mr. Mitchem and Mr. Scott. They then left the property and petitioner returned home. Petitioner asserted that Mr. Porterfield came to his home and asked him to go back to the Jennings home. When they arrived, Mr. Porterfield pulled out a gun and began shooting at the home. Petitioner asserted that he did not know that Mr. Porterfield had a gun and that he ran when Mr. Porterfield began firing at the home. Petitioner stated that he never took the gun or fired any shots.

West Virginia State Trooper D. R. Murray was the investigating officer on the scene of the August 29, 2017, shooting. He testified at trial that he located several bullet holes in the Jennings' home and that Mr. Mitchem's back was grazed by a bullet. Trooper Murray testified that he believed six shots were fired into the home because six casings were found. Law enforcement's efforts to find Mr. Porterfield were unsuccessful.

At the close of the State's case-in-chief, petitioner made a motion for acquittal, which was denied. Petitioner made a second motion for acquittal at the conclusion of all the evidence. That motion was also denied. For the July 10, 2017, shooting petitioner was found guilty of three counts of wanton endangerment with a firearm and two counts of gross child neglect creating a substantial risk of serious bodily injury. For the August of 2017, incident, petitioner was found guilty of four

3

counts of wanton endangerment with a firearm.

On September 27, 2018, post-trial motions were heard. Petitioner again moved for judgment of acquittal, for a new trial, and to reinstate his bond. The circuit court denied the motions on October 3, 2018. For the July of 2017 incident, petitioner was sentenced to five years of incarceration for each of the three counts of wanton endangerment involving a firearm and one to five years for each of the two counts of gross child neglect creating substantial risk of bodily injury. The sentences were ordered to run concurrently. For the August of 2017 incident, petitioner was sentenced to five years of incarceration for each of the four counts of wanton endangerment with a firearm. The sentences were ordered to run concurrently. The sentences for the July of 2017, shooting were ordered to run consecutively with the sentences for the August of 2017, shooting. The circuit court further ordered the sentences to be suspended, and sentenced petitioner as a youthful offender to the Anthony Correctional Center for not less than six nor more than two years. Petitioner now appeals.

On appeal, petitioner raises three assignments of error. First, he contends that the circuit court committed reversible error when it failed to grant a judgment of acquittal at the close of the State's case-in-chief and again at the conclusion of all the evidence. Second, he argues that West Virginia Code § 61-7-12 is unconstitutional and void for vagueness. Third, he argues that the circuit court committed reversible error when it failed to declare a mistrial due to improper remarks, improper evidence, misconduct by the State in regard to the jury, and juror misconduct.

In support of his first assignment of error, petitioner argues that the State did not present sufficient evidence to meet its burden of proof to establish each of the elements of wanton endangerment and gross child neglect creating a substantial risk of serious bodily injury. He argues that the lower court wrongly denied his motion for judgment of acquittal after the close of the State's case-in-chief and again at the close of all the evidence.

We apply "a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Jenner*, 236 W. Va. 406, 413, 780 S.E.2d 762, 769 (2015) (citation omitted). In addition to this general standard of review, we have also held that the function of this Court in reviewing sufficiency of the evidence claims

> is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

*Id.*, syl. pt. 2, in part (citing syl. pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Moreover,

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the

prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

*Jenner*, 236 W. Va. at 409, 780 S.E.2d at 765, at syl. pt. 3.

Petitioner fails to explain how the circuit court erred in failing to grant his motions for acquittal. Further, petitioner fails to identify a single element of wanton endangerment or gross child neglect creating a substantial risk of serious bodily injury that the State failed to prove at trial. Petitioner merely asserts in his brief that the circuit court erred in denying his motions for judgement of acquittal.

West Virginia Code § 61-7-12, the statute regarding wanton endangerment involving a firearm, states that

[a]ny person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or fined not less than two hundred and fifty dollars nor more than two thousand five hundred dollars, or both.

This court has held that "the elements of wanton endangerment include: (1) the defendant (2) did wantonly perform (3) with a firearm (4) an act (5) creating substantial risk of (6) death or serious bodily injury to another." *State v. Wright*, 200 W. Va. 549, 553, 490 S.E.2d 636, 640 (1977).

We find that the evidence, when viewed in the light most favorable to the prosecution, is sufficient for a rational trial of fact to conclude that the State proved all of the elements of the crimes beyond a reasonable doubt. Regarding the July of 2017 incident, Tracie Casey testified at trial that petitioner stated "I've got something for you" and then went back into the house. She stated that as she was driving away, she heard gun shots. Tracie Casey further testified that her daughter, Rhya, could not have fired the first two shots because she would not have had time to get into the house and back out again since she was standing in the yard. Tracie Casey testified that when she last saw petitioner, he was on the porch of the house. Further, Rhya Casey's initial statement to the police was that petitioner was the one who brought the gun outside and fired the shots. As such, there was sufficient evidence for a rational jury to find that petitioner wantonly discharged a firearm in the vicinity of Rhya Casey, Tracie Casey, and the two children, thus creating a substantial risk of death or serious injury. When viewed in the light most favorable to the prosecution, all of the elements of wanton endangerment with a firearm were met for the July

2017 incident.

Regarding the August 2017 incident, Mr. Jennings testified, that on the night in question, he saw petitioner take a gun from Mr. Porterfield and fire shots at his home. He stated that, although it was dark that night, petitioner was standing under a street light, which made him clearly visible. Further, Mrs. Jennings placed a 9-1-1 call, which was played for the jury. During that call, someone in the background can be heard saying that although Mr. Porterfield brought the gun to the scene, petitioner was the one that fired the shots. Also, several bullet holes were found in the Jennings' home and shells were recovered from the scene. Photographs of Mr. Mitchem's back, showing a bullet-graze wound, were submitted into evidence. Based on the foregoing, we find that there is sufficient evidence for a jury to find that petitioner wantonly discharged a firearm in the vicinity of four people, thus creating a substantial risk of death or serious injury. When viewed in the light most favorable to the prosecution, each of the elements of wanton endangerment with a firearm were met for the August 2017 incident. Therefore, petitioner was not entitled to judgment of acquittal.

West Virginia Code § 61-8D-4(c), the statute addressing gross child neglect creating a substantial risk of serious bodily injury, states that

> [i]f a parent, guardian or custodian grossly neglects a child and by that gross neglect creates a substantial risk of death or serious bodily injury, as serious bodily injury is defined in section one, article eight-b of this chapter, of the child then the parent, guardian or custodian is guilty of a felony and, upon conviction thereof, shall be fined not less than $1,000 nor more than $3,000 dollars or imprisoned in a state correctional facility for not less than one nor more than five years, or both.

Each of the elements of gross child neglect creating a substantial risk of serious bodily injury were also established at trial. The jury concluded that petitioner discharged a firearm toward a vehicle containing two children. One of the children, Z.W.,[3] is petitioner's biological son. The other child, D.C., lived with petitioner or stayed in the home, thereby making petitioner a guardian or custodian. Discharging a firearm toward a vehicle containing two children is a negligent action that clearly created a risk of death or serious bodily injury to the children inside the vehicle. Thus, all elements of the crime were established. We, therefore, find petitioner's first assignment of error to be without merit.

In his second assignment of error, petitioner argues that West Virginia Code § 61-7-12 is unconstitutional and void for vagueness because the statute clearly fails to specify what conduct is prohibited. Petitioner asserts that he was convicted of a crime that no person of ordinary intelligence could contemplate to be a violation of West Virginia Code § 61-7-12. He argues that

---

[3]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

the statute makes no reference or attempt to describe what criminal conduct must be committed in order to violate the statute. We disagree.

This Court has stated:

"Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). Likewise, "[c]onstitutional challenges relating to a statute are reviewed pursuant to a *de novo* standard of review." *Morris v. Crown Equip. Corp.,* 219 W.Va. 347, 352, 633 S.E.2d 292, 297 (2006).

In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

Syllabus Point 1, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965). *See also* Syllabus Point 3, *Willis v. O'Brien,* 151 W.Va. 628, 153 S.E.2d 178, (1967) ("When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.").

*MacDonald v. City Hosp., Inc.*, 227 W. Va. 707, 714, 715 S.E.2d 405, 412 (2011). This Court has explained that, "vagueness challenges seek to vindicate two principles of due process: fair notice by defining prohibited conduct so that such behavior can be avoided, and adequate standards to prevent arbitrary and discriminatory law enforcement." *State v. James*, 227 W. Va. 407, 419, 710 S.E.2d 98, 110 (2011).

Petitioner's second assignment of error lacks merit. Petitioner fails to identify which portion of the statute he believes to be unconstitutionally vague. Rather, petitioner merely asserts that the statute fails to reference or describe the criminal conduct necessary to violate the statute. This Court finds that a plain reading of West Virginia Code § 61-7-12 shows that the statute is neither vague nor unconstitutional. As stated above, we have held that "the elements of wanton endangerment include: (1) the defendant (2) did wantonly perform (3) with a firearm (4) an act (5) creating substantial risk of (6) death or serious bodily injury to another." *Wright*, 200 W. Va. at 553, 490 S.E.2d at 640. We disagree with petitioner's assertion that he was convicted of a crime that no person of ordinary intelligence could contemplate to be a violation of West Virginia Code § 61-7-12. Clearly, a person of ordinary intelligence could determine that discharging a firearm at

a vehicle with three people in it and discharging a firearm at an occupied home are criminal acts. *See State v. John H. B.*, No. 18-0905, 2019 WL 5092948 (W. Va. Oct. 11, 2019) (memorandum decision) (upholding petitioner's convictions for six counts of wanton endangerment with a firearm after he discharged a firearm toward two occupied bedrooms), *State v. Goins*, 231 W. Va. 617, 748 S.E.2d 813 (2013) (upholding petitioner's conviction for wanton endangerment with a firearm after he fired numerous shots at an occupied vehicle). Accordingly, we reject petitioner's second assignment of error.

Petitioner lastly contends that the circuit court committed reversible error when it failed to declare a mistrial. First, petitioner argues that the State's overuse of speculation and conjecture during opening and closing statements prejudiced the jury. Second, petitioner argues that the State improperly sought to submit previously suppressed evidence and that the jury heard such evidence. Third, petitioner argues that potential juror misconduct occurred during a twenty-six day continuance. Petitioner states that, after State witnesses failed to appear, the case was continued to allow the State time to find its witnesses. However, the jury had already been selected, informed of the charges against petitioner, and learned the names of the alleged witnesses and victims. Petitioner argues that this information created an obvious compromise of the jury and that a mistrial should have been granted. He asserts that even though trial counsel failed to request a mistrial, this matter constitutes plain error and is subject to review by this Court.

We disagree. Though petitioner alleges that speculation and conjecture during opening and closing arguments prejudiced the jury, he failed to identify a single statement in support of his assertion. Likewise, petitioner also failed to identify the previously suppressed evidence that the jury allegedly heard. Finally, though petitioner claims there was potential juror misconduct, he provided no evidence or explanation of what misconduct occurred. We have previously held in *State v. Trail*, 236 W. Va. 167, 175, 778 S.E.2d 616, 624 (2015) that:

> "[T]he mere allegation of juror misconduct is insufficient to warrant a new trial. First, there must be proof that some improper event has occurred. "Misconduct on the part of the jury as grounds for a new trial is not presumed but must be fully proved by the moving party." 58 Am. Jr. 2d *New Trial* § 143, at 195 (2012) (footnote omitted)".

As petitioner failed to provide sufficient evidence in support of his assertions that the jury was prejudiced and that juror misconduct occurred, we find no error.

For the foregoing reasons, we affirm the circuit court's November 8, 2018, sentencing order.

Affirmed.

**ISSUED:** April 6, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead

Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison